**In re Marsha SMYTH, Debtor.**

**G. Morris Hamm, Appellants,**

**v.**

**Mark Hiler, Caroline Jones, and The Farm Credit Bank of Texas, Appellees.**

Bankruptcy No. 92–51548 C–13.
No. SA–95–CA–1201–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

March 3, 1999.

---

## ORDER AFFIRMING BANKRUPTCY COURT'S RULING

ORLANDO L. GARCIA, District Judge.

This is an appeal from the bankruptcy court's order imposing significant sanctions against attorney Morris Hamm ("Hamm") for actions he took in apparent representation of the Debtor, Marsha Smyth ("Marsha") and her mother, Erma Lee Smyth ("Erma Lee"). In a somewhat rambling argument, Hamm raises a litany of errors which he contends merit reversal of the sanctions order. The Court has reviewed those arguments, but finds them to be without merit. Accordingly, the Court affirms the bankruptcy court's ruling.[1]

### I. *Background.*

The facts of this case present one of the more egregious examples of attorney misconduct that the Court has seen. The centerpiece of this litigation is approximately 3200 acres of property in Uvalde County that make up the Smyth family ranch. Until 1992, Erma Lee held title to the property, which was subject to certain deed of trust liens held by Appellee Farm Credit Bank of Texas (the "Bank"). Erma Lee's daughter, Marsha, helped Erma Lee manage the property and operated a hunting business on it.

In October of 1988, Erma Lee filed her first bankruptcy petition, listing the property as an asset on her schedules. That petition was voluntarily dismissed a few months later, but Erma Lee was forced to file again in September of 1989. She was able to work out a reorganization plan with the Bank, which was confirmed in May of the following year. But once again, Erma Lee ran into financial difficulty, and in February of 1992, she filed her third bankruptcy petition, again listing the property on her schedules. A few months later, in April, the Bank was granted relief from the stay to foreclose on the property, relief that Erma Lee did not contest.

Nevertheless, on the eve of the foreclosure, Marsha went to the Bank and presented it with a copy of a deed purporting to convey the property from Erma Lee to her, dated January 20, 1992 (but not actually recorded until May of 1992). Marsha further informed the Bank that she had filed for bankruptcy (thus commencing this case) and had listed the property on *her* schedules, thereby preventing the foreclosure from going forward. The following morning, May 5, 1992, the Bank responded by immediately moving for relief from the stay in bankruptcy to allow the foreclosure to proceed. The bankruptcy granted the

---

**1.** After examination of the briefs and the record, the Court concludes that the facts and legal arguments of the parties are adequately set forth therein and that the decisional process would not be aided by oral argument. Bankr.R. 8012.

motion that day and the foreclosure went forward.

Hamm's involvement with the Marsha's bankruptcy proceeding did not become apparent until June 1, 1992, when he filed a motion for leave to appear *pro hac vice* (subsequently denied as improper in form) and a response to the Court's order to show cause why Marsha's bankruptcy proceeding should not be dismissed. In its May 15, 1992 order to show cause, the bankruptcy court clearly was concerned that something was amiss with Marsha's bankruptcy filing. The order stated that dismissal appeared appropriate because (1) Marsha was unrepresented, "rendering the likelihood of an effective reorganization virtually impossible," (R. at 135), and (2) Marsha's sole motivation appeared to be to hinder the Bank from foreclosing on the property, even though the bankruptcy court suspected that Marsha had obtained title in a manner "entirely outside the law." (*Id.*)

In his written response to the order to show cause, Hamm represented that "the Debtor [Marsha], through her mother, Erma Leigh [sic] Smyth, has interest [sic] in approximately 3,200 acres of land in Uvalde County, Texas upon which the Debtor has lived and worked for many years," (R. at 167), and that this interest "was acquired by her prior to the filing of this bankruptcy," (*id.*). Hamm went on to argue that Marsha had the potential for a successful reorganization because she and another gentleman, Mr. Al. Barnes, had developed a new technology for drying sanitary sludge to produce a fertilizer and could use the property for such an operation, despite the fact that the Bank had rejected such a proposal in connection with Erma Lee's 1990 bankruptcy filing. Hamm kept to this story during the hearing on the order to show cause, even when directly questioned about when the property was transferred from mother to daughter:

THE COURT: Great. So why was [the property] listed in her mother's schedules as her mother's property?

MR. HAMM: Well, her mother had held legal title for some time. The debtor has actually operated the ranch for her mother for some time, and this was a means of effecting the transfer from mother to daughter to reflect the actual—

THE COURT: But if the transfer was done prior to mother's bankruptcy filing, why was it listed in mother's bankruptcy estate?

MR. HAMM: The deed had apparently been dated prior to there but had not been recorded as a legal transfer at that point. So—

THE COURT: So it wasn't transferred until after the filing of the bankrupt—

MR. HAMM: It wasn't transferred until after the filing.

THE COURT: Then if it wasn't filed [until] after the filing, then mother couldn't transfer it because mother didn't own it.

(R. at 174–75.) At the conclusion of the hearing, the bankruptcy court did not dismiss the case, even though it indicated its skepticism that any reorganization would be possible without the property, because it was concerned over the Bank's report that Hamm had counseled Marsha to deny the Bank access to the property in connection with the foreclosure of a second parcel and it wanted to ensure access would be permitted.

Hamm's next action was to prepare a lawsuit on behalf of Marsha and Erma Lee in state court against the Bank, an officer of a Bank-related entity, Mark Hiler, and one of its in-house attorneys, Caroline Jones. The complaint alleged claims for breach of fiduciary duty and sex discrimination under 42 U.S.C. § 1983, premised on the Bank's action in rejecting Erma Lee's above-mentioned proposal to use the property for the sludge disposal and fertilizer production operation, and plead dam-

ages of one million dollars. Hamm sent the petition to the state court for filing by cover letter dated June 10, 1992. The suit was actually filed on June 23, 1992. On July 28, 1992, the Bank removed the action to bankruptcy court and filed a separate motion to convert Marsha's proceeding to a Chapter 7 liquidation.

These potential claims against the Bank and related individuals set forth in the lawsuit were never listed as an asset of Marsha's estate; nor did Hamm contact the Chapter 7 trustee for Erma Lee's estate regarding them. Likewise, Hamm did not seek the bankruptcy court's approval for his employment to prosecute the case. Several weeks later, however, Hamm moved to dismiss Marsha's bankruptcy proceeding, but that motion was summarily denied for failure to attach a form order. Apparently, despite a certificate of mailing to the contrary, neither the Bank nor Marsha ever received this pleading.

On September 17, 1992, the bankruptcy court conducted hearing on the Bank's motion to convert Marsha's bankruptcy case and a status conference on the removed state court action. Hamm did not appear, allegedly due to the flu, and attorney Dick Davis (who had represented Erma Lee in her bankruptcies) appeared in his stead. At that hearing, it became clear that Hamm had unilaterally taken action that had not been approved by his client and had otherwise misrepresented matters to the bankruptcy court. At the conclusion of the hearing, the bankruptcy court granted the Bank's motion to convert the case and retained jurisdiction over the then-removed state court lawsuit, now captioned as an adversary proceeding in Marsha's bankruptcy case.

Shortly thereafter, on October 9, 1992, the Bank, Marsha and Erma Lee filed an agreed motion to dismiss the adversary proceeding, but requested the bankruptcy court to hold open Marsha's Chapter 7

case to allow the Bank to file a motion for sanctions against Hamm. The bankruptcy court granted that relief, the Bank filed its motion, and the court held a hearing on it on March 2, 1993. Hamm was present at that hearing and presented testimony on his own behalf, none of which contradicted the Bank's description of his actions in this case in any material way. At the conclusion of the hearing, the bankruptcy court issued its oral ruling on the Bank's motion for sanctions, concluding that Hamm had in multiple ways violated his obligations under Rule 11 and other provisions to be candid with the court. It imposed sanctions, in the form of the Bank's reasonable attorney fees and expenses of $72,000, plus a punitive sanction of $2,500 payable to the Bank, Hiler and Jones.[2] Hamm now appeals.

## II. *Issues.*

### A. *Standard of Review.*

Bankruptcy Rule 8013 establishes the standard of review in bankruptcy proceedings. Under that rule, findings of fact are not to be disturbed unless clearly erroneous, with due regard given to the bankruptcy court's assessment of a witness's credibility. Bankr.R. 8013. Of course the bankruptcy court's conclusions of law are reviewed *de novo*. Its ultimate decision to impose sanctions, however, is reviewed for an abuse of discretion. *See Goldin v. Bartholow*, 166 F.3d 710, at 722 (5th Cir. 1999). But where that decision is premised on "an erroneous view of the law or on a clearly erroneous assessment of the evidence," the imposition of sanctions is "necessarily [an] abuse [of] discretion." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *see also Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir.1998).

### B. *Sufficiency of the Bankruptcy Court's Findings.*

Hamm's first contention on appeal is that the bankruptcy court's decision was

---

**2.** In the original order, (*see* R. at 887), the Bank, Hiler and Jones were each awarded actual damages of $25,000. Upon motion

and further briefing by the Bank, however, the Court eliminated that award in an amended order. (*Id.* at 942.)

not supported by adequate findings of fact and conclusions of law. While the Court wholeheartedly agrees that the lower court's decision imposing sanctions must be supported by adequate findings and conclusions, *see Granader v. McBee*, 23 F.3d 120, 123 (5th Cir.1994); *Akin v. Q–L Investments, Inc.*, 959 F.2d 521, 534–35 (5th Cir.1992), the bankruptcy court's ruling in this case easily meets that standard.

■■ Hamm maintains that the bankruptcy court's ruling is insufficient because the court's written order, (*see* R. at 887–88), contains no separate findings or conclusions. Yet he ignores the 186–page transcript of the hearing in which the bankruptcy court, in approximately 33 of those pages, (*see id.* at 744–77), clearly set forth its reasons for making the sanctions award. Hamm's strained argument, that the written order must contain the court's findings, flies in the face of the clear instruction of the central case he cites for this proposition: *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988). There the Fifth Circuit observed that "[t]he trial court's articulated explanation on the record of its Rule 11 decision should be sought at the earliest moment after sanctions are imposed or denied," and "[i]f a Rule 11 decision is not rendered in open court, a request should be made for record findings and conclusions from the court as soon as practicable after the decision." *Id.* at 883 n. 24. That language clearly implies that a written order is only necessary if the Court's findings are not otherwise set forth in open court, which they were here. Accordingly, the Court rejects Hamm's first argument as unsupported by the facts or the law.

*C. Sanctions Under Rule 11.*

■■ Hamm next raises a number of arguments all centering on the relationship between the action he filed against the

Bank in state court and the imposition of sanctions against him in this case under Rule 11.[3] Hamm's most central argument is that he may not be sanctioned for filing the lawsuit in state court, even though it was removed to bankruptcy court, because Rule 11 applies only to pleadings originally filed in federal court. The Court will now examine that argument and explain why, ultimately, it doesn't matter.

In this case, the bankruptcy court's imposition of Rule 11 sanctions, as they related to Hamm's action in filing the state court lawsuit, was premised on the Fifth Circuit's opinion in *Foval v. First National Bank of Commerce*, 841 F.2d 126, 130 (5th Cir.1988). *Foval* was decided after the Fifth Circuit's decision in *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988), wherein the Fifth Circuit joined its sister circuits to hold that Rule 11 does not include a continuing duty to reevaluate the averments made in pleadings; rather, the attorney's conduct is measured at the time he files the pleading. *Thomas* is cited prominently in *Foval*, a case in which an attorney was sanctioned under Rule 11 for prosecuting a meritless claim after it had been removed to federal court, even though he had filed no pleadings since removal. In light of the *Thomas* decision's new pronouncement on the procedures and standards for the imposition of Rule 11 sanctions, the Court in *Foval* remanded the case to the district court for reconsideration in light of those standards. In doing so, however, it observed that

Rule 11 should not countenance sanctions for pleadings filed in state court in a case later removed to federal court unless, their deficiency having been promptly brought to the attention of the pleader after removal, he (or she) refuses to modify them to conform to Rule 11. Rule 11 does not apply to conduct

**3.** Rule 11 is made applicable to bankruptcy proceedings by Bankr.R. 9011. The standards governing both provisions are generally the same. Therefore, for ease of reference the

Court will not distinguish between cases construing Rule 11 and those construing Bankr.R. 9011.

that occurred in state court before removal.

841 F.2d at 130. The bankruptcy court's ruling echoes this language. In his bench ruling, the bankruptcy judge stated:

The Fifth Circuit has recognized that once you're in this Court it's no longer the State Court rules that apply, it's the Federal Court rules. And if you're given the opportunity to pull down the pleading, that's fine. Why is that? It's very simple. Once the case is removed to Federal Court, there is no State Court lawsuit. . . . [It] becomes a federal lawsuit. So the fact that the pleading was not originally filed in Federal Court and therefore not filed under the restrictions of Rule 11 is really irrelevant. The real point is that once it did become a Federal lawsuit, you've got a duty to go back and say, "Ooh, will this survive under Rule 11?" Especially if it's brought to your attention and you're given a chance to pull it down.

(R. at 749.)

Since *Foval,* the Fifth Circuit has never cited that case for the proposition upon which the bankruptcy court relied, although other courts have. *See, e.g., Herron v. Jupiter Trans. Co.,* 858 F.2d 332, 336 (6th Cir.1988); *Tompkins v. Cyr,* 995 F.Supp. 689, 692–93 (N.D.Tex.1998); *McCampbell v. KPMG Peat Marwick,* 982 F.Supp. 445, 447 n. 3 (N.D.Tex.1997). *But see Bisciglia v. Kenosha Unified School Dist. No. 1,* 45 F.3d 223, 227 (7th Cir.1995) (recognizing no continuing post-removal to reevaluate pleadings under 1983 version of Rule 11); *Robinson v. Dean, Witter, Reynolds, Inc.,* 129 F.R.D. 15, 20 (D.Mass.1989) (same). In a more recent opinion, the Fifth Circuit indicated that the dicta in *Foval* may no longer hold true. In *Edwards v. General Motors Corp.,* the Fifth Circuit declined to hold an attorney liable for sanctions in a removed case where the attorney had not filed pleadings in federal court since removal, even though the lawsuit was meritless. 153 F.3d 242 (5th Cir. 1998). The Court reasoned:

There is no indication, in the text of [Rule 11], that it applies to filings in any court other than a federal district court. Thus it cannot apply to the petition Crampton filed in state court that thereafter was removed. . . .

Moreover, rule 11 does not impart a continuing duty, but requires only that each filing comply with its terms as of the time the paper is signed. Consequently, Crampton cannot be sanctioned simply for her failure to withdraw pleadings filed in state court that would have violated rule 11 had they been filed in federal court.

*Id.* at 245 (citations and footnotes omitted). *Edwards* thus indicates that Rule 11, without more, does not require an attorney to withdraw a frivolous petition when it is removed to federal court.

■ But the court in *Edwards* was not confronted with a situation in which the opposing party brought the deficiencies in the removed state court pleading to the signer's attention without result, a distinction that may make a difference. *See Griffen v. City of Oklahoma City,* 3 F.3d 336, 339 (10th Cir.1993) (citing passage in *Foval* while holding that Rule 11 imposes no continuing duty). But even assuming that Hamm could not be sanctioned under Rule 11 for failing to dismiss the complaint against the Bank, Jones and Hiler when counsel for the Bank requested him to do so after removal, Hamm's sanctionable conduct in this case did not begin with and is not limited to that one pleading. Before he filed the state court lawsuit, Hamm had already counseled Marsha to execute the fraudulent, back-dated deed conveying the property from Erma Lee to Marsha on a date before Erma Lee's most recent bankruptcy filing. He had further instructed Marsha that the only way to protect the property was for her to list it as an asset on her own bankruptcy proceedings. Hamm continued to advocate the position that Marsha had acquired the property pre-petition in a bona fide transfer. Hamm first did so in writing in his re-

sponse to the Court's order to show cause filed on June 1, 1992, in which he represented that Marsha had acquired the property from Erma Lee before filing for bankruptcy. (*See* R. at 167).[4] He reiterated that position in open court during the hearing conducted that same day. (*Id.* at 171). Moreover, in opposing dismissal of Marsha's bankruptcy proceeding by claiming the possibility of a successful reorganization, Hamm not once mentioned to the bankruptcy court his intention to file the state court lawsuit, which, if meritorious would have represented a substantial potential asset of the estate, even though he had drafted the lawsuit as much as four days earlier. (*See* R. at 647.) All of these actions occurred before the lawsuit was actually filed in state court, and Hamm's written, signed and filed response to the order to show cause in this case, was premised upon them.

The same can be said as to Hamm's motion to dismiss Marsha's bankruptcy case, filed on July 13, 1992. (*See* R. at 213.) In that pleading, Hamm represented that the purpose of the bankruptcy was to protect the property—the "primary asset" of Marsha's estate—implying that since the property had been foreclosed upon, there were no other assets to be administered. Yet Hamm had forwarded the state court lawsuit for filing several weeks earlier, in which he pled damages of one million dollars, half of which was likely due to Marsha's estate if the case was successful and a chunk of which would likewise have gone into his own pocket under the contingency fee arrangement he had with Marsha. Moreover, Hamm, despite a certificate of service to the contrary, never actually provided the Bank or his client a copy of the pleading, leading the bankruptcy court to conclude, justifiably, that it had been filed for an improper

purpose and had intentionally not been provided to other parties.

Finally, on August 20, 1992, Hamm filed his application to be employed as special litigation counsel as to the then-removed state court lawsuit. While that motion was ultimately denied for matters of form, it clearly indicates Hamm's intention, at that time, to pursue and advocate the frivolous claims brought therein. Thus, at least three additional pleadings that Hamm signed and filed with the bankruptcy court—the response to the order to show cause, the motion to dismiss Marsha's bankruptcy case, and Hamm's application for employment as special counsel— each support the imposition of sanctions under Rule 11. Consequently, the Court concludes that the imposition of sanctions under Rule 11 was not error.

D. *Sanctions under § 105 and the Court's Inherent Authority.*

 Alternatively, even if Rule 11 could not have provided the foundation for the imposition of sanctions, as the bankruptcy court correctly recognized, it also had the inherent authority as well as the power under § 105 of the Code to do so. These two provisions exist *in addition to* Rule 11, *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir.1995), and are particularly appropriate to fill in the interstices where Rule 11's provisions are inapplicable, *see, e.g., Fellheimer, Eichen & Braverman, P.C. v. Charter Tech. Inc.*, 57 F.3d 1215, 1228 (3d Cir.1995) (imposing sanctions pursuant to inherent power against entire law firm where Rule 11 "not up to the task" because only one of firm's attorneys signed pleadings). "[T]he standard for the imposition of sanctions using the court's inherent powers is extremely high. The court must find that the 'very temple of justice has been defiled' by the sanctioned party's conduct." *Goldin v.*

---

4. Interestingly, Hamm also states in that pleading that, "because of time constraints involved, the Debtor's counsel, G. Morris Hamm, was unable to sign the pleading for relief prior to it's [sic] filing and the filing was

to be on a *pro se* basis," (R. at 169), indicating that he may have participated in the drafting of Marsha's petition and schedules, even though he did not sign them.

*Bartholow*, 166 F.3d 710, at 722 (quoting *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir.1995)). In other words, a specific finding of bad faith is required. *See Crowe v. Smith*, 151 F.3d at 236. Section 105 likewise authorizes the bankruptcy court to award damages as a sanction for civil contempt or in response to the improper practice of law before it. *See Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612 (5th Cir. 1997); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir.1996) (noting court's power to sanction, as well as power to hold party in contempt, under § 105); *In re Pace*, 67 F.3d 187, 193 (9th Cir.1995). *See generally* 2 Collier on Bankruptcy § 105.04[7][b] (L. King 15th ed. rev.1998).

■■■ In this case, the Court finds that Hamm's unflinching lie to bankruptcy court regarding when the property was transferred qualifies as a "defiling of the very temple of justice." In the sanctions hearing the bankruptcy court once again reviewed Hamm's testimony in the earlier show cause hearing, wherein Hamm unsuccessfully attempted to demonstrate how Marsha could have acquired her interest in the property before her mother's bankruptcy. The bankruptcy court then observed:

> That was your opportunity to tell the truth, and you lied to the Court. Now I don't know what I'm going to do about that Counsel. I will tell you that if Rule 11 doesn't cover it, I can think of a few other things that do. Now you can't lie to any judge. And you sure as heck can't lie to this one.

(R. at 759–60.) It went on to catalogue Hamm's other actions, from "advising [his] client to break the law" and "suborning perjury," (*id.* at 760), to "serious abuse of process," (*id.* at 762), and undertaking litigation with a built-in conflict of interest for his own benefit, (*see id.* at 764–66.) In light of these findings, each amply supported by the record, the Court cannot find that the bankruptcy court abused its discretion in exercising its inherent or § 105 authority to sanction, either as an alternative or in addition to Rule 11. *See Crowe v. Smith*, 151 F.3d at 237 (affirmative misrepresentations or near misrepresentations sufficient to support a finding of bad faith); *In re Pace*, 67 F.3d 187, 193–94 (remanding for a determination of damages under § 105 against attorneys who had concealed existence of state court lawsuit from bankruptcy trustees and attempted to obtain settlement proceeds for themselves); *Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir.1994) (noting that invocation of § 105 appropriate in instances of abuse of process).

### E. *Sanctions under § 1927.*

■■■ Finally, although the bankruptcy court only minimally relied on 28 U.S.C. § 1927 as an alternative basis for imposing sanctions, (*see* R. at 765), in light of the Fifth Circuit's reasoning in *Edwards*, discussed above, § 1927 provides equally strong support for the court's action. This provision authorizes the court to impose sanctions personally on "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously," and "requires evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards*, 153 F.3d at 246. As is readily apparent from the above discussion of Hamm's activities in this case, Marsha's entire bankruptcy proceeding was essentially a vexatious and ill-advised effort to prevent the foreclosure of the property, premised entirely on Hamm's improper, incorrect and unethical legal advice that Marsha could succeed in that effort by executing a backdated deed for its transfer. Because this Court may affirm on any ground apparent from the record, *see Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998), the Court likewise holds that the sanction award may be upheld under § 1927.

### F. *Other Arguments.*

■■■ Hamm challenges the bankruptcy court's decision on several other

grounds, none of which require in-depth discussion. For example, Hamm suggests that the Bank, Hiler and Jones lacked standing to seek damages because they did not file a claim against Marsha in her bankruptcy proceeding. The Court is unaware of any authority that limits the imposition of sanctions in a bankruptcy proceeding to creditors only, and Hamm provides none. In fact, the text of the rule contains not such limitation, nor would one be logical. Rule 11 and its bankruptcy counterpart, Bankr.R. 9011, protect the integrity of the Court and the party or parties who have been prejudiced by violation of its provisions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. at 397, 110 S.Ct. 2447 (Rule 11 "aimed at curbing abuses of the judicial system"). The Bank, Hiler and Jones were brought into this proceeding by Hamm's action, not the reverse. To preclude them from seeking sanctions in such circumstances would be unfair and unwarranted.

■■■■ Hamm also argues that these parties should not be awarded their attorney fees because they failed to mitigate their damages. Hamm relies on *Thomas v. Capital Security Services, Inc.* for the proposition that such a duty to mitigate exists. *See* 836 F.2d 866, 879 (5th Cir. 1988). While the Court agrees that, in awarding a party the reasonable expenses it incurred as a result of a Rule 11 violation, expenses and fees that "could have been avoided or were self-imposed" is improper, *id.*, Hamm fails to explain how the Bank, Hiler and Jones failed to mitigate here. The record instead reveals that counsel for these parties took prompt to action every step of the way, by moving for relief from the stay the day after Marsha's bankruptcy petition was filed, expeditiously removing the state court lawsuit to federal court and then counseling Hamm to withdraw it, moving to convert the case to a Chapter 7 liquidation, and finally, moving for sanctions. These facts simply fail to indicate any failure to mitigate by the Bank, Hiler or Jones.

■■ Hamm also makes the half-hearted argument that he had insufficient notice that sanctions would be imposed. Once again, the record belies such a conclusion. Hamm was advised by the Bank's counsel shortly after the state court lawsuit had removed that he should dismiss the suit because it was meritless. Any perceptive attorney should have at that time known that sanctions were a possibility. Moreover, in their agreed motion to dismiss that lawsuit filed on October 9, 1992, the Smyths, the Bank, Jones and Hiler stated in that pleading:

> Mark Hiler, Caroline Jones, and the Bank have no objection to the Adversary Proceeding being dismissed with prejudice. However, they respectfully request this Court to keep the Marsha Smyth Chapter 7 case open after the dismissal of the Adversary Proceeding with prejudice so that they may prosecute a motion for sanctions against the law firm of Schindler & Hamm, P.C., and/or Morris Hamm, individually, for, among other reasons, the filing of the Complaint that created the Adversary Proceeding.

(R. at 435.) That request was reflected in the Court's order granting the motion. (*See id.* at 450.) Then, on December 15, 1992, the Bank, Hiler and Jones filed a written motion requesting sanctions, Hamm had an opportunity to respond in writing, and then the Court held an extensive hearing on the motion. In sum, there simply is no basis to hold that Hamm had insufficient notice that sanctions would be imposed.

■■ Finally, Hamm contends that, for several reasons, the amount of sanctions awarded was improper. The court awarded actual expenses and fees based on the Bank's testimony that it incurred $67,500 in fees from the time it hired counsel to pursue relief from the stay in May 1992 through December of that year. (R. at 710). In addition, it awarded the Bank $5,000 in connection with its appearance at the sanctions hearing and work in connection with it. (R. at 775.) In so ruling, the

bankruptcy court recognized the difficulty in bringing a sanctions motion and the expense necessary to justify it. (*Id.*) This Court's review of the pleadings filed by counsel for the Bank indicate that they were consistently well-drafted, on point, and set forth with clarity the somewhat convoluted history of Hamm's actions. Counsel's pleadings were not in any way excessive or out of proportion to that necessary to adequately protect the Bank's interests; in fact, the fees generated in this case were largely of Hamm's own making, in that it was he who caused the Bank to take virtually all of the action it took in this case, a case that was ill-founded at its conception. Hamm never questioned the Bank during the sanctions hearing about the nature of its fees and expenses nor filed any pleading challenging them after the bankruptcy court's oral ruling. *See Merriman v. Security Ins. Co. of Hartford,* 100 F.3d 1187, 1192 (5th Cir.1996) (requiring no separate hearing on amount of fees where movant filed unopposed affidavit as to fees and sanctioned party did not thereafter challenge amount.) Consequently the Court rejects Hamm's argument as to the amount of the fee award, which was not excessive in light of the pervasiveness and severity of the violations in this case.[5] All other arguments not specifically addressed in this order are likewise rejected.

### III. *Conclusion.*

IT IS ORDERED THAT the Judgment of the Bankruptcy Court is in all things AFFIRMED.

---

[5]. Hamm also suggests that the bankruptcy court erred in awarding costs in the state court action. (*See* Br. of Appellant at 17.) Hamm fails to recognize that none of the Bank's actions to defend against the state court lawsuit were taken in state court; it removed the action before it even filed an answer. Consequently, there were no costs generated in that forum.

He also apparently challenges the bankruptcy court's imposition of a punitive or deterrent award of $2,500 as beyond the scope of Rule 11. But as the Court has already noted, the bankruptcy court's sanctions were not premised solely on its power under Rule 11, and Hamm has not demonstrated that such a sanction is improper under the other provisions addressed herein.