IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-10456

_____

MICHAEL BAULCH, GISELA S. BAULCH,
individually and on behalf of their
deceased son KENNETH BAULCH; and as
next friend of KYLE WAYNE BAULCH,

Plaintiffs-Appellees,

VERSUS

ROBERT C. JOHNS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

November 29, 1995

Before SMITH and BARKSDALE, Circuit Judges, and BUCHMEYER, District Judge.

JERRY BUCHMEYER, District Judge:[*]

This is an interlocutory appeal by a Garland police officer from the district court's denial of his motion for summary judgment based on the doctrine of qualified immunity. Because there are disputed issues of material fact concerning the qualified immunity defense, we lack jurisdiction to consider the interlocutory appeal. Accordingly, we dismiss. In addition, because counsel for appellant has multiplied these proceedings unreasonably and vexatiously, we impose sanctions against counsel pursuant to 28 U.S. C. § 1927.

## I. The Factual Dispute

It is undisputed that the defendant, Garland Police Officer Robert C. Johns ("Johns"),

_____

[*]/Chief Judge of the Northern District of Texas, sitting by designation.

1

shot and killed Kenneth Baulch ("Baulch") in Baulch's home on February 14, 1991. However, the material facts underlying this incident are hotly disputed.

According to Johns, he shot and killed Baulch in self-defense. Specifically, Johns claims that he and other members of the Garland Police Department, acting under a valid search warrant, entered Baulch's residence to search for illegal narcotics; that Baulch fled into a bedroom on the south side of the home; that Johns entered the south bedroom in pursuit; but that Baulch ambushed Johns and began pounding him with an unidentified weapon. Johns insists that this attack forced him to shoot and kill Baulch from a defensive, crouching position.

Not surprisingly, Baulch's parents ("plaintiffs") present a decidedly different version. According to them, when Johns and the other Garland police officers raided Baulch's residence, Baulch was sleeping in the south bedroom. As Baulch was awakened by the raid, Johns forcibly entered the south bedroom, ordered Baulch to "freeze," but then *immediately* shot Baulch before he could comply with this command. Plaintiffs support these allegations with an autopsy report documenting the examination performed on Baulch the following day, February 15, 1991, at the Southwestern Institute of Forensic Sciences under the authority of the Dallas County Medical Examiner ("Autopsy Report"). This Autopsy Report -- *a copy of which was provided to the plaintiff's attorney by Garland Chief of Police Terry Hensley* -- concludes that, of the four gunshots that struck Baulch, *three bullets entered Baulch's body from the back*. Thus, the Autopsy Report creates this obvious factual dispute: did Johns shoot Baulch in the back without justification, or did Johns shoot Baulch to prevent him from continuing a deadly assault on Johns?

## II. Procedural Background

Plaintiffs brought suit against Johns individually under 42 U.S.C. § 1983, alleging that Johns employed excessive deadly force in violation of Baulch's rights under the Fourth Amendment. Johns moved for summary judgment, arguing that the doctrine of qualified

2

immunity shielded him from suit.  The district court,  reasoning that the Autopsy Report alone was sufficient to create fact questions as to whether Baulch was shot in the back three times while he was retreating from Johns, denied the motion for summary judgment.  Johns filed this interlocutory appeal from the denial of his qualified immunity defense.

### III. Analysis

In substance, Johns urges two points on appeal.  First, he claims that the Autopsy Report alone is insufficient to create a genuine issue of material fact as to his qualified immunity defense.  Second, Johns argues that the district court abused its discretion in considering the Autopsy Report because that report had not been properly authenticated by the plaintiffs.  The first argument is specious, the second is frivolous, and neither merits extended discussion.

A.      **An interlocutory appeal must present an issue of law,
        not a dispute about the facts**

It is well-settled that "a district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law*, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."[1]  However, as the Supreme Court made clear in *Johnson v. Jones*, _____ U.S. _____, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995), "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines *whether or  not the pretrial record sets forth a 'genuine' issue of fact for trial.*"[2] Indeed, even before *Johnson,*

---

[1]/*Mitchell v. Forsyth,* 472 U.S. 511 at 530, 105 S. Ct. 2806 at 2817, 86 L. Ed. 2d 411 (1985). See also *Hale v. Townley,* 45 F. 3d 914, 918 (5th Cir. 1995).

[2]/*Id* at _____, 115 S. Ct. at 2159.  *Accord, Hale,* 45 F. 3d at 918; *Boulos v. Wilson*, 834 F. 2d 504, 509 (5th Cir. 1987).

we had consistently held that a district court's denial of a qualified immunity summary judgment is not appealable when there are disputed issues concerning the immunity claim. *Tamez v. City of San Marcos, Texas*, 62 F. 3d 123 (5th Cir. 1995); *Johnston v. City of Houston*, 14 F. 3d 1056, 1060 (5th Cir. 1994); *Lampkin v. City of Nacogdoches*, 7 F. 3d 430, 431 (5th Cir. 1993), *cert. denied*, _____ U.S. _____, 114 S. Ct. 1400, 128 L. Ed. 2d 73 (1994).

This appeal does not present an issue of law. Instead, Johns merely argues that the district court was wrong in concluding that the Autopsy Report creates a genuine issue of material fact concerning this central issue: did Johns shoot Baulch in self-defense or did he shoot Baulch without provocation? In his affidavit, Johns claims that Baulch attacked him, struck him repeatedly with an unidentified object, and forced Johns to shoot Baulch in self-defense. In stark contrast, the Autopsy Report indicates that the fatal shots struck Baulch in the back while Baulch was retreating. Faced with conflicting evidence, the district court determined that there was a genuine issue of material fact concerning the lawfulness of the force employed by Johns. We agree. Accordingly, under *Johnston, Tamez* and *Hale*, we lack jurisdiction over Johns' interlocutory appeal from the denial of his qualified immunity motion for summary judgment.

B.     The Autopsy Report was properly authenticated

It is undisputed that the Autopsy Report concerning Baulch's death was provided to the plaintiffs, in response to a deposition subpoena duces tecum, by Garland Chief of Police Terry Hensley, the supervisor of officer Johns. Despite this, Johns' attorney argues before us, as he did before the district court, that the Autopsy Report was not properly authenticated by the plaintiffs. While the district court did not explain why it rejected this argument by Johns' attorney, we hold that the Autopsy Report is clearly admissible under Rule 901, Fed. R. Evid.:

> Rule 901. Requirement of Authentication or Identification
>
> (a)     General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims.

4

**(b)** **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

**(1)** **Testimony of witness with knowledge.** Testimony that a matter is what it is claimed to be

...

\*       \*       \*

**(4)** **Distinctive Characteristics and the like.** Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

We do not require district courts to find that authenticity is conclusively established before allowing the admission of disputed evidence. *United States v. Lance*, 853 F. 2d 1177, 1181 (5th Cir. 1988); *United States v. Whittington*, 783 F. 2d 1210, 1215 (5th Cir.), *cert. denied*, 479 U.S. 882, 107 S. Ct. 269, 93 L. Ed. 2d 246 (1986). For example, in *United States v. Lopez*, 873 F. 2d 769, 772 (5th Cir. 1989), we held that the district court did not abuse its discretion when it admitted a document "which appear[ed] on its face and by its contents to be a record of conviction of illegal entry into the United States." The document at issue in *Lopez* was not under seal, and it was not supported by testimony of the document's custodian. However, the document was supported by testimony that "provided circumstantial evidence to support the conclusion that the document was an official record," including the signature of a United States Magistrate Judge and a clerk of that court. Together, "internal indicia of reliability within the document" and testimony concerning the chain of custody of the document after it was provided to a border patrol agent authenticated the document under Rule 901.

In this case, the Autopsy Report is clearly admissible under the same Rule 901 analysis. As submitted to the district court, the Autopsy Report is an eight page, single-spaced document containing an in-depth forensic analysis of Baulch's organ weights, the gunshot entrance and exit wounds, toxicology, etc. The Autopsy Report is signed by the Medical Examiner, Dr. Charles Odem, and by the Acting Chief Medical Examiner, Dr. Jeffrey

Barnard.  It is also supported by the affidavit of Heather Harvey,[3]/ which establishes that the Autopsy Report was provided to plaintiffs' counsel by Garland Police Chief Terry Hensley in response to the plaintiffs' subpoena duces tecum.  While Harvey was not the record custodian of the Autopsy Report, her testimony regarding its chain of custody after it was produced, combined with the distinctive characteristics of the document itself, is certainly sufficient to authenticate the Autopsy Report under Rule 901.

### IV. Sanctions Under 28 U.S.C. § 1927

Because of his frivolous arguments concerning the Autopsy Report -- which needlessly wasted the time of the opposing counsel and of this Court -- we impose sanctions upon Johns' attorney, John W. Bickel II.

We may impose sanctions upon "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously."  29 U.S.C. § 1927 (West 1994).[4]/ Of course, § 1927 is to be strictly construed, and sanctions may not be imposed for mere negligence on the part of counsel. *Browning v. Kramer*, 931 F. 2d 340, 344 (5th Cir. 1991).  However, § 1927 sanctions are appropriate when an attorney has acted in bad faith, with improper motive, or with a

---

[3]/Ms. Harvey is an employee of the plaintiffs' attorney.  Her affidavit states in paragraph 6:

> Exhibit "3" to this affidavit is a true copy of the Autopsy Report documenting the autopsy performed on Kenneth Baulch on February 15, 1991 at the Southwestern Institute of Forensic Sciences. *Garland Police Chief Terry Hensley, who is also represented in this action by Defendant's counsel, produced this report to Plaintiffs on May 28, 1993 in response to Plaintiffs' subpoena duces tecum*, dated May 11, 1993.

[4]/28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

6

reckless disregard of the duty owed to the court. *FDIC v. Conner*, 20 F. 3d 1376, 1384 (5th Cir. 1994); *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La.*, 38 F. 3d. 1414, 1417 (5th Cir. 1994).

Counsel for Johns has displayed, at the very least, a reckless disregard of his duties as an officer of this Court by arguing that the Autopsy Report was not properly authenticated. Despite his argument, Johns' counsel does not dispute these facts: the Autopsy Report was prepared by the Southwestern Institute of Forensic Science, under the authority of the Dallas County Medical Examiner; a copy of it was provided to Garland Police Chief Terry Hensley; in response to a *subpoena duces tecum,* Chief Hensley -- *who is also represented in this action by counsel for Johns* -- produced the Autopsy Report to the plaintiffs' attorney. This put Johns' counsel in the position of arguing to us that a document he provided to opposing counsel "may not" be a true and accurate copy of the Autopsy Report located in his client's files. [5]/

Indeed, Johns' counsel admitted to us at oral argument that, in truth, *he had no reason to believe that the Autopsy Report was not a true copy of the autopsy report prepared at Southwestern Institute of Forensic Sciences.* In fact, counsel admitted that he had never compared the Autopsy Report either with the original report at the Southwestern Institute or with the copy provided to his client, Chief of Police Terry Hensley.[6]/ Nor has Johns' counsel even attempted to explain why his expert witnesses may properly rely upon the Autopsy Report, but the plaintiffs may not do so.[7]/

---

[5]/Similarly, the argument in his post-argument brief -- that the original report on file with the Dallas County Medical Examiner's Office reveals that the Autopsy Report is missing a page -- puts Johns' counsel in the position of claiming that the autopsy Report was not admissible because his client, Chief of Police Terry Hensley, provided an incomplete copy of the report to the plaintiffs' attorney.

[6]/If he had done so, he would have discovered that the Autopsy Report was substantially correct. See fn. 5.

[7]/In Defendant's Response to Plaintiffs' Third Set of Interrogatories and Request for Production of Documents, Johns' counsel identifies two expert witnesses whose testimony would rely on the Autopsy Report: Dr. Martin Fackler and Donald Bassett.

Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous appeals and arguments waste scarce judicial resources and increase legal fees charged to parties. *See Carmon v. Lubrizol Corp.*, 17 F. 3d 791, 795 (5th Cir. 1994); *Plattenburg v. Allstate Ins. Co.*, 918 F. 2d 562, 562 (5th Cir. 1990). Accordingly, we hold that § 1927 sanctions are appropriate in this case against Johns' attorney because of his arguments to this Court that the Autopsy Report was not properly authenticated when, in truth, (i) the attorney had no reason to doubt the document's accuracy, (ii) the document was produced to opposing counsel by a witness who was also represented by Johns' attorney, and (iii) the attorney's own expert witnesses rely upon a copy of the same Autopsy Report.

We are mindful that § 1927 sanctions should not be assessed without fair notice and without giving the attorney an opportunity to respond. *See Alizadeh v. Safeway Stores, Inc.*, 910 F. 2d 234, 236 (5th Cir. 1990), *citing Roadway Express, Inc. V. Piper*, 447 U.S. 752, 100 S. Ct. 2455, 2462, 65 L. Ed. 2d 488 (1980). However, in their briefing to this Court, plaintiffs strenuously argued that the instant appeal was frivolous. Then, at oral argument, we questioned Johns' counsel at length about the basis for his arguments concerning the Autopsy Report. Counsel for Johns responded to these issues at oral argument and later in as post-argument briefs. We are convinced, therefore, that counsel has received notice that we were considering sanctions against him and has enjoyed sufficient opportunity to respond. *See Coghlan v. Starkey,* 852 F. 2d 806 (5th Cir. 1988); *Farguson v. Mbank Houston, N.A.*, 808 F. 2d 358 (5th Cir. 1986) (*per curiam*).

We conclude that, pursuant to 28 U.S.C. § 1927, appellant's attorney should be assessed the attorney's fees of appellees' counsel and all costs incurred in this appeal. Counsel for appellees has filed an affidavit in accordance with Local Rule 47.8, setting forth the time reasonably spent on this appeal and the reasonable hourly rate charged in similar cases in the

Dallas area.[8]/ See *Atwood v. Union Carbide Corp.*, 847 F. 2d 278, 281-82 (5th Cir. 1988) (*per curiam*). Accordingly, we award reasonable attorneys fees of $20,643.75 and costs to the appellees' counsel.

## V. Conclusion

This appeal is DISMISSED. SANCTIONS are imposed under 28 U.S.C. § 1927, and reasonable attorneys fees of $13,831.31 and costs are taxed against counsel for appellant. These sanctions are to be paid to appellees' counsel within thirty (30) days from the date the mandate issues.

---

[8]/This affidavit asserts that appellees' counsel spent 91.75 hours on this interlocutory appeal and that $225 to $300 is a reasonable hourly rate for attorneys of comparable experience. Appellant's response does not question the hours or the rate claimed. Given this uncontested assertion, we approve of $13,831.31 as a reasonable fee in this case, but, as the specifics were not subject to adversarial testing, we do not opine on whether the rate claimed would be reasonable in other cases in the Dallas area.