**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-11190

_____


WILLIAM P. EDWARDS,

Plaintiff-Appellant,

HOLLY CRAMPTON,

Appellant,

VERSUS

GENERAL MOTORS CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
September 11, 1998

Before KING, SMITH, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


This appeal of attorney sanctions requires us to decide whether a district court may sanction an attorney for filings made in state court prior to removal. Because we conclude that district courts are not authorized to do so, we reverse that portion of the award that is based on pre-removal conduct. Because, however, the sanctioned attorney continued to maintain her case in federal court long after she realized it had no merit, we affirm that portion of

the award that is based on her vexatious multiplication of the proceedings.

## I.

Plaintiff William Edwards was employed by General Motors Corporation ("GM") at its plant in Wichita Falls, Texas, and was a member of the United Auto Workers ("UAW"). As such, he was subject to the collective bargaining agreement ("CBA") between GM and the UAW, which requires covered employees to bring grievances, including discharge decisions, through union grievance procedures. Appellant Holly Crampton is a lawyer who specializes in employment litigation, often against GM, and has appeared before the district judge *a quo* on several occasions.

In 1994, after receiving complaints that plant employees had been selling and using drugs on the premises of its Wichita Falls plant, GM arranged for Kevin Ray, an experienced undercover drug agent, to investigate. He worked in the plant for almost a year, observing and talking to employees, and identified six employees whom he had observed using drugs. Among them was Edwards, whom Ray had observed snorting cocaine at the plant in February 1995. Five of the six charged employees were white; Edwards is black.

Pursuant to the disciplinary procedures of the CBA, GM charged Edwards with using cocaine on the premises. Edwards was first suspended and then discharged. Of the six drug-using employees Ray

identified, five were discharged and oneSSwho had used marihuana rather than cocaineSSwas given a disciplinary layoff. The relative severity of these penalties was based on previous arbitration decisions involving similar or identical conduct. In all, four whites and one black were discharged, and one white was given lesser punishment.

Edwards filed a formal grievance with the UAW, claiming that the discharge was an excessive penalty. The grievance mentioned nothing about race discrimination or retaliation. Edwards never prosecuted that grievance, and nothing became of it.

## II.

In 1996, Crampton filed suit on behalf of Edwards in state court, alleging that he had been unfairly targeted for his involvement in matters surrounding a layoff in 1987-88, and for his race. It alleged causes of action under Texas law for race discrimination and retaliation, intentional infliction of emotional distress, and defamation.

GM removed to federal court, answered the complaint, and requested attorneys' fees under FED. R. CIV. P. 11. In November 1996, GM moved for summary judgment, again requesting attorneys' fees. On December 7, the parties attended a mandatory mediation session.

On that day, according to Crampton, she and Edwards concluded that they could not win their case. They decided that instead of

3

pursuing it any further, Edwards would become the named plaintiff in a new class action that Crampton was preparing to file. In the district court and in her briefs filed with this court, Crampton expressly conceded that after December 7, 1996, she anticipated and desired that Edward's suit be dismissed on the merits.[1]

Crampton did not seek a voluntary dismissal, however, nor did she notify GM or the court that she no longer intended to pursue the case. Instead, she continued to allow GM to incur attorneys' fees as it prepared for trial. She filed no substantive motions, but did request several extensions of time, and filed witness and exhibit lists. She never filed an answer to GM's motion for summary judgment, however, and on January 30, 1997, the court issued a fourteen-page memorandum opinion and order granting summary judgment for GM.

The court concluded that (1) Edwards put forth no evidence of racial discrimination; (2) he put forth no evidence of retaliation; (3) even if he had presented evidence, he had waived these claims by failing to allege discrimination or retaliation in his labor grievances; and (4) under *Bagby v. General Motors Corp.*, 976 F.2d 919 (5th Cir. 1992),[2] his state law claims were preempted by federal labor law.

---

[1] Crampton's willingness to accept a dismissal on the meritsSSwhich of course precludes Edwards ever again from bringing his claimSSstands at odds with the notion that she intended to refile Edwards's claim as part of a class action.

[2] Crampton was undeniably aware of that case, for she herself had brought that action, and lost in the Fifth Circuit.

4

Shortly after receiving summary judgment, GM moved for attorneys' fees. Crampton filed a notice of appeal, though she had never responded to the motion for summary judgment and had produced no summary judgment evidence. This court dismissed the appeal for want of prosecution.

In July 1997, the district court held a hearing on GM's motion for attorneys' fees, at which it received evidence and heard argument. The court granted GM's motion, awarding rule 11 sanctions of $46,820, representing the entire amount of attorneys' fees incurred by GM in its defense of the lawsuit. Alternatively, the court awarded $24,220 under 28 U.S.C. § 1927, representing GM's fees incurred only after December 7, the date on which Crampton now admits that she gave up on the suit.

III.

A.

There is no indication, in the text of the rule, that it applies to filings in any court other than a federal district court.[3] Thus, it cannot apply to the petition Crampton filed in state court that thereafter was removed. *See Foval v. First Nat'l Bank of Commerce*, 841 F.2d 126, 130 (5th Cir. 1988) ("Rule 11 does not apply to conduct in state court prior to removal."). To be

---

[3] We also note that FED. R. CIV. P. 1 states that the Federal Rules of Civil Procedure "govern the procedure in the United States district courts."

5

sure, we have upheld sanctions in removed cases. *See, e.g., Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018 (5th Cir. 1994). But such sanctions are proper only insofar as they are based on post-removal filings. *Cf. id.* at 1023 n.16 (specifying post-removal filings upon which sanctions were imposed).

Moreover, rule 11 does not impart a continuing duty, but requires only that each filing comply with its terms as of the time the paper is signed. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) (en banc). Consequently, Crampton cannot be sanctioned simply for her failure to withdraw pleadings filed in state court that would have violated rule 11 had they been filed in federal court.[4]

B.

To uphold sanctions under rule 11, we must be able to point to some federal filing in which the sanctioned attorney violated that rule. Rule 11 requires that attorneys certify that their claims are well-grounded in fact and in law, and that their filings are not being presented for any improper purpose. *See* rule 11(b). Absent improper purpose, therefore, a rule 11 violation must be

---

[4] Other circuits to have addressed this issue also have concluded that plaintiffs cannot be sanctioned after removal under rule 11 for papers filed in state court. *See, e.g., Worthington v. Wilson*, 8 F.3d 1253, 1257-58 (7th Cir. 1993); *Hurd v. Ralph's Grocery Co.*, 824 F.2d 806, 808 (9th Cir. 1987); *Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir. 1987). *Cf. also Schoenberger v. Oselka*, 909 F.2d 1086, 1087 (7th Cir. 1990) (noting that all circuits to have addressed the question agree).

predicated on the certification of some legal or factual claim.

From removal through December 7, Crampton made no such certification. And no one has argued that she made any filing for an improper purpose during that time. In fact, the only paper she filed during that nine-month period was a designation of expert witnesses. This filing made no legal or factual contentions and is not alleged to have been made for an improper purpose. Therefore, we cannot uphold the award of rule 11 sanctions for the period through December 7, 1996.[5]

IV.

The district court also based a portion of the award on 28 U.S.C. § 1927. Specifically, the court awarded attorneys' fees under that section for Crampton's continued maintenance of the action after December 7, the date on which she admittedly determined that her case was unwinnable, and on which she decided not to pursue the claim any further.

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The adverbs being in the conjunctive, sanctions

---

[5] We need not address whether sanctions would be maintainable under rule 11 for the period after December 7, for in the next section we conclude that an award of post-December 7 attorneys' fees may be upheld under 28 U.S.C. § 1927.

under § 1927 must be predicated on actions that are both "unreasonable" *and* "vexatious." *See Travelers Ins. Co. v. St. Jude Hosp., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994). This requires that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *See id.; Baulch v. Jones*, 70 F.3d 813, 817 (5th Cir. 1995).

Because of the punitive nature of § 1927 sanctions, and in order not to chill legitimate advocacy, the provision must be strictly construed. *See id*. We review the ruling only for abuse of discretion, however, and we must be careful to avoid substituting our own judgment for that of the district court. *See St. Jude*, 70 F.3d at 817. "[T]he question we address is not whether this Court, in its own judgment and as an original matter, would have imposed any of these sanctions. Rather, we only ask whether the district court abused its discretion in doing so." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993).

The district court found that "Crampton's actions in refusing to disclose to GM or to the Court her decision to abandon the prosecution of this case were unreasonable and vexatious. The Court also specifically finds that Crampton has acted in bad faith, with improper motive, and with a reckless disregard of the duty owed to the Court." The court found that Crampton deliberately kept her meritless case alive for no purpose other than to force GM to settle or to defend it: "In eleven years on the bench, this

Court has never witnessed an attorney so willfully cause an opposing party to needlessly incur attorney's fees."

The record is littered with indications that Crampton abandoned her suit, but willfully required GM to continue to defend it, and required the court to continue to consider its merits. In the sanctions hearing, Crampton admitted that after December 7, she knew that she had no case as a matter of fact, stating that "[i]n my opinion, I could not show intentional discrimination." Nor did she have a case as a matter of law: "[I]f we were successful at trial, I don't think the Fifth Circuit would have affirmed it." Therefore, she admitted, "I really didn't want to save this case."

Crampton, who represents herself on appeal, has made similar admissions to this court. For example, in her opening brief, she stated one of the issues as "[w]hether counsel is required to inform the adverse party and/or the court of the party's decision not to respond to a motion for summary judgment in anticipation that the case will be dismissed as a result of the failure to respond, *which is the anticipated and desired result*[.]" (Emphasis added.) Perhaps most compelling is her pattern of conduct in the district court: That she never filed any substantive motions, never took any depositions, and never even responded to GM's motion for summary judgment is strongly indicative that she had abandoned the suit. The district court did not abuse its discretion in finding that Crampton decided to abandon the suit on December 7.

9

There is also ample support for the finding that after that date, Crampton deliberately acted so as to force GM to continue to incur costs, preparing to defend her now-abandoned claim. Although she "anticipated and desired" that the case should be dismissed on the merits, Crampton filed witness and exhibit lists as if she were gearing up for trial. Twice she moved for an extension of time to respond to GM's summary judgment motion, though she never did respond. Crampton even went so far as to move for a trial continuance, though she admits she never intended to go to trial.

Crampton was not content to allow her suit to die on the vine. Rather, she kept it alive, hoping to extort a nuisance-value settlement. In so doing, she abused the judicial process to harass an apparently innocent defendant into paying money to which her client had no rightful claim. Her deliberate acts bespeak not negligence, but bad faith: the willful continuation of a suit known to be meritless, and conceded to have been abandoned. The district court did not abuse its discretion in concluding that Crampton unreasonably and vexatiously multiplied the proceedings by keeping Edward's suit alive after she had decided to pursue it no further.

V.

In summary, because the district court had no authority to impose rule 11 sanctions for the filings Crampton made in state court, we REVERSE that portion of the sanctions attributable solely to those filings. We AFFIRM the sanctions awarded under 28 U.S.C.

10

§ 1927 in the amount of $24,220, which is the amount of attorneys'

fees GM incurred after December 7, 1996.