

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| HOLLY GAIL CRAMPTON, | § | No. 08-15-00074-CV |
| Appellant, | § | Appeal from |
| v. | § | 30th District Court |
| COMMISSION FOR LAWYER | § | of Wichita County, Texas |
| DISCIPLINE, | § | (TC # 179,451-A) |
| Appellee. | § | |

## **O P I N I O N**

This appeal from a disciplinary proceeding posits several questions, including what it means when the Chief Justice of the Texas Supreme Court "rescinds" the appointment of a judge to hear a case, and then appoints a new judge in his stead. Specifically, does the order rescinding an appointment void everything that went before, or does it merely mean the newly appointed judge picks up where the former judge left off? Thereafter, we must examine whether the former judge properly granted partial summary judgment, and whether Texas summary judgment practice is constitutionally sufficient to deprive a lawyer of their license to practice law. We set forth the background facts from the summary judgment record.

**FACTUAL SUMMARY**

The disciplinary proceeding at issue starts with Steven and Tammy Young who were foster parents wishing to adopt one of the children they had in their care. They claim that the Texas Department of Family and Protective Services (the Department), for nefarious reasons, removed the child and put the child up for adoption by another family. The Youngs hired Crampton on November 16, 2009. They paid her a $7,500 non-refundable retainer. The Youngs signed an employment contract which defined the scope of Crampton's representation to include the filing of a civil rights claim against the Department in state district court, and the filing of an intervention in the on-going adoption of the child. The contract provided in all capitalized and bolded wording that it was for "state court matters only and does not include representation in any federal court." Despite that disclaimer in the employment contract, the Youngs believed, based on their discussions with Crampton, that the civil rights suit would wind up in federal court either because it would be filed there, or would be removed from state court. Crampton conceded that she informed the Youngs that the potential defendants would have the right to remove a case asserting only a federal civil rights claim, but she had a different take on litigating the case if it got to federal court.

Crampton contends that following the initial consultation, the Youngs agreed with her that if the suit were removed, they would do nothing and simply let it be dismissed. Her affidavit states:

> I explained while we could file initially in state court, we could not stop or prevent the [Department] from removing the case into federal court if the Defendants chose to. I explained that if this happened (the case was removed to federal court), that I would do 'absolutely nothing' and that the civil rights case would be over. The Youngs' [sic] agreed that they would accept this, and discussed that at least they would have tried.

2

Crampton contends that the employment agreement purposely did not recite this part of their agreement because it might be subject to discovery and she would not want the Department to know of the consequence of a removal. Conversely, the Youngs claim they were never made aware of any plan to not file responses to dispositive motions if the case found its way to federal court.

As it turned out, litigating in federal court presented a problem for Crampton. Based on an unpaid monetary sanction that had been assessed against her in a prior federal case, she could not practice in the United States District Court for the Northern District of Texas. Crampton had been disbarred from practicing in that court since July 1, 1999.[1] The Youngs stated that they were never told this fact, and Crampton concedes she did not inform them of her federal disbarment.

The civil rights suit was filed on October 17, 2011, in the 30th Judicial District Court for Wichita County, Texas against the Department and three of its employees. It alleged that because Mr. Young provided truthful testimony in a judicial proceeding that undermined the positon of the Department, it revoked the Youngs' license to provide foster care. The suit sought injunctive relief "to secure the rights" of the Youngs. It also sought monetary damages under 42 U.S.C. § 1982 and § 1983. The suit did not assert any state law claims.

The Department removed the suit to the United States District Court for the Northern District of Texas based on federal question jurisdiction. Once removed, one of the individual

---

[1] The underlying sanctions order grew out of *Edwards v. General Motors Corp.*,153 F.3d 242 (5th Cir. 1998). Crampton was sanctioned both for filing a baseless suit in state court, and then after agreeing with her client that the suit had no merit, not dismissing it once it had been removed. *Id.* at 244-45. In an appeal from the sanctions order, the Fifth Circuit held that a federal court cannot sanction an attorney for pre-removal filings, but the district court was justified in this instance in sanctioning Crampton for post-removal conduct. *Id*. at 247. The Fifth Circuit thus affirmed part the monetary sanction attributable to Crampton's post-removal conduct. The opinion detailed that conduct, which included moving to continue a summary judgment hearing, posturing for trial, but never filing a response to the motion. *Id.* In Crampton's words, "After I succeeded in offending the court in oral argument, the resulting opinion was understandably harsh." Post appeal, she was disbarred from practicing in the northern district until she paid the sanction. From our record, she has never paid the sanction award.

defendants filed a motion to dismiss, and the Department and the other individual defendants filed a motion for summary judgment on the pleadings. When no response was filed in opposition to the motion to dismiss, the federal district court issued an order requiring a response to be filed by a date certain. Again, no response was filed to the motion to dismiss, or to the motion for summary judgment, and the federal case was dismissed without prejudice on February 23, 2012. The dismissal order allowed the Youngs to reinstate the case within thirty days. No motion to reinstate or appeal the dismissal order was ever filed.

Crampton never withdrew as counsel of record in the federal proceeding, nor did she advise the Youngs of their ability to retain other counsel. She contends in part that a "domestic relations exception" to federal jurisdiction bars federal civil rights suits "if issues of family law were in any way involved." Her affidavit describing the domestic relations exception is not grounded in a discussion of the controlling case law on that issue, but is rather based on the statement that a federal district judge made to her in 1982 during a proceeding in another case. She also discussed in her affidavits how federal court is a less desirable forum for a litigant. Based on these concerns, she would not have asked any other attorney to substitute in for her in this case.

The record presents several conflicting claims between Crampton and the Youngs. The Youngs contend that they were never given a copy of the original suit papers. Crampton directly disputes this claim. The Youngs also claim they never received any notice of the removal, the answer filed by the Department and its employees, the motion to dismiss, or the motion for summary judgment. Crampton contends she orally told Mr. Young that an answer had been filed, that the case had been removed, and that the suit was "essentially over" as there was no basis to seek a remand to state court. Crampton concedes that she did not specifically inform

them of the motion to dismiss, motion for summary judgment, or order requiring a responsive pleading to be filed. She did not do so, however, based on the previous agreement to do nothing if the suit was removed. Conversely, the Young's claim they were never made aware of any plan not to file responses to dispositive motions. Crampton maintains she spoke with the Youngs by phone several times a month and saw them several times in her office; she attached a matrix documenting the dates of those alleged calls and office visits.

Mr. Young met with Crampton in August 3, 2012. Even then he was not told that the civil rights case had been dismissed some six months earlier; he only learned that fact later from another lawyer. Crampton, however, insists that she orally informed Mr. Young of the dismissal within a week or two after the court entered the order.

Crampton had also attempted to intervene in the adoption, but asserted that the district clerk, at the direction of the state trial court hearing that case, refused to accept her filing. Upset with Crampton's representation, Mr. Young initiated a grievance with the State Bar against her.

## PROCEDURAL BACKGROUND

Under Article II, Section 1 of the Texas Constitution and Section 81.011(c) of the State Bar Act, the Texas Supreme Court has the power to regulate the practice of law in the State of Texas. *In re State Bar of Texas,* 113 S.W.3d 730, 732 (Tex. 2003). The Court has the constitutional and statutory responsibility to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline. TEX.RULES DISCIPLINARY P.R. Preamble, *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (West 2013). The Supreme Court has delegated the responsibility for administering and supervising lawyer discipline and disability to the Board of Directors of the State Bar of Texas. *Id.* The Board is vested with authority to adopt rules of procedure and administration consistent with the Texas

5

Rules of Disciplinary Procedure. *Id.* The Commission for Lawyer Discipline (the Commission) is a permanent committee of the State Bar of Texas. TEX.GOV'T CODE ANN. § 81.076(b)(West 2013); TEX.RULES DISCIPLINARY P.R. 1.06(D). Each attorney admitted to practice in Texas is subject to the disciplinary and disability jurisdiction of the Supreme Court and the Commission. TEX.GOV'T CODE ANN. § 81.071. Likewise, each attorney is subject to the Texas Rules of Disciplinary Procedure and the Texas Disciplinary Rules of Professional Conduct. *Id*. at § 81.072(d).

Under these rules, a grievance against a lawyer starts as an administrative proceeding, and may be classified either as an inquiry or a complaint. *Id*. at § 81.073. The Youngs' grievance against Crampton was pursued as a complaint by the Commission. At one point in the process, the lawyer can choose to have a complaint heard by a district court. *Id*. at § 81.075(b)(2)(A). Crampton made that election. The Commission then filed its petition detailing the complaint with the Texas Supreme Court. The Texas Supreme Court is to designate an "active district judge" to hear the case. TEX.RULES DISCIPLINARY P.R. 3.02, *reprinted in* TEX.GOV'T CODE ANN. tit 2, subtit. G, app. A-1. On August 1, 2013, the Texas Supreme Court appointed then sitting district court judge William A. Mazur, Jr. to hear the proceeding. The Commission then filed and served its petition on Crampton in Wichita County.[2] At the same time, the Commission filed a motion for partial summary judgment along with the petition.

The petition asserted violations of six rules of professional conduct: Texas Disciplinary Rules of Professional Conduct 1.01(b)(1), 1.01(b)(2), 1.03(a), 1.03(b), 1.15(a)(1), and 8.04(a)(3), all arising out the facts we have outlined above. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01, 1.15 and 8.04, *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A (West 2013)

---

[2] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* Tex.R.App. P. 41.3.

(Tex.State Bar R. art. X, § 9). The motion for summary judgment set out evidence and arguments for each of the six specific alleged violations. Crampton filed a response to the motion, which included her own affidavits, and excerpts of various depositions taken in the case. On September 30, 2014, Judge Mazur granted the motion as to three of the claimed violations: TEX. RULES OF PROF'L CONDUCT R. 1.01(b)(1), 1.01(b)(2), and 1.15(a)(1).

Judge Mazur then held a hearing on December 4, 2014 to determine the appropriate sanction for the violations that he found. On December 19, 2014, the court signed a Judgment of Partially Probated Suspension. The order assessed a two year license suspension (one year of which was probated) for each of the three violations found in the summary judgment. The order contains additional terms and conditions, including paying restitution to the Youngs. The signature blank on the order contains Judge William Mazur, Jr.'s typewritten name. The order itself has two handwritten signatures, one by Judge Mazur and one by Judge Harold Gaither, Jr. The order was filed on January 6, 2015.

Crampton filed a motion for new trial complaining that Judge Gaither had no authority or jurisdiction to sit in the case. The motion acknowledged that Judge Mazur signed the judgment, but did so on a date unknown, and that as of January 1, 2015, Judge Mazur was no longer sitting as an active district court judge. Crampton filed a brief below which acknowledged her attorney received the judgment on December 30, 2014. On February 2, 2015, Crampton's attorney alerted the Texas Supreme Court that Judge Mazur was no longer an active district judge and that there were motions pending in the case. The Texas Supreme Court on February 8, 2015, appointed Judge Jim Jordan of the 160th District Court of Dallas County to preside. The same

day, the Supreme Court rescinded Judge Mazur's assignment to the case.[3]  On February 25, 2015, Judge Jim Jordan overruled Crampton's motion for new trial.

## IS THE JUDGMENT VOID?

In her first two issues, Crampton contends that the order granting summary judgment is void.  The argument is comprised of three parts.  First, Crampton asserts that since Chief Justice Hecht *rescinded* Judge Mazur's appointment, any of Judge Mazur's actions in the case, including granting the partial summary judgment, are void.  Crampton then argues that the signature of Judge Gaither on the final judgment is of no effect because he was never appointed to hear this case, and that the denial of the motion for new trial by Judge Jordan cannot revive the earlier void order by Judge Mazur.  We do not reach these last two threads of the argument, because we disagree with the fundamental thesis that Judge Mazur's actions were void.

When an attorney timely elects to have a district court hear a complaint, the Commission files its disciplinary petition with the clerk of the Texas Supreme Court.  TEX.DISCIPLINARY RULES PROF'L CONDUCT R. 3.01.  The Supreme Court then appoints an active district judge to preside over the case.  *Id*. at Rule 3.02.  The appointed judge is subject to objection, recusal, or disqualification as provided by law.  *Id*.  When the appointed judge is unable to fulfill the appointment, the Texas Supreme Court may appoint a replacement.  *Id.*

---

[3]  The order reads:

> The Supreme Court of Texas hereby rescinds Misc. Docket No. 13-9074, dated August 1, 2013. appointing the Honorable William A. Mazur, Jr., Judge of the 304th District Court, Dallas County, Texas, to preside in the Disciplinary Action styled: The Commission for Lawyer Discipline v. Holly Gail Crampton filed as Case No. 179,451-A, In the 30th Judicial District Court, Wichita County, Texas." /s/ Blake A Hawthorne, Clerk Supreme Court of Texas.

A similar order was signed by Nathan L. Hecht as Chief Justice.  A trial brief filed by Crampton states that these orders were issued following a phone conference with the counsel for the Texas Supreme Court, at which time counsel "agreed that the solution to the problem of Judge Mazur ceasing to be an active district judge, was for the Chief Justice of the Texas Supreme Court to appoint an active district judge to finish the case."

Judges may be removed from a particular case either because they are constitutionally disqualified,[4] because they are subject to a statutory prohibition,[5] or because they are recused under rules promulgated by the Texas Supreme Court.[6] *In re Union Pacific Resources Co.*, 969 S.W.2d 427, 428 (Tex. 1998); *Esquivel v. El Paso Healthcare Systems, Ltd.*, 225 S.W.3d 83, 87 (Tex.App.--El Paso 2005, no pet.). The grounds and procedures for each type of removal are fundamentally different. *Esquivel*, 225 S.W.3d at 87. If a judge is constitutionally disqualified, or subject to disqualification under Texas Government Code § 74.053, for instance, any order or judgment rendered by that judge is void. *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982); *Fry v. Tucker*, 146 Tex. 18, 202 S.W.2d 218, 221 (1947); *Favaloro v. Comm'n for Lawyer Discipline*, 13 S.W.3d 831, 838 (Tex.App.--Dallas 2000, no pet.).

In contrast, when a judge is recused under the rules of civil procedure, the earlier actions of a recused judge are deemed valid and continue in effect unless altered by the new judge assigned to hear the case. *See In re Union P. Resources Co.*, 969 S.W.2d at 428; *Randolph v. Texaco Expl. and Prod., Inc.*, 319 S.W.3d 831, 834 (Tex.App.--El Paso 2010, pet. denied).

Crampton suggests that Chief Justice Hecht's order rescinding Judge Mazur's appointment is tantamount to a disqualification and thus voids his earlier actions. We disagree. Nothing in the record indicates that the order replacing Judge Mazur had anything to do with a constitutional or statutory disqualification. The record does not contain a motion filed with the Texas Supreme Court seeking Judge Mazur's disqualification. At most, the record suggests that the parties informally called to the attention of the Texas Supreme Court that Judge Mazur was no longer an active judge as of January 1, 2015, and that he could no longer act on the matters

---

[4] Tex. Const. art. V, § 11.

[5] TEX.GOV'T CODE ANN. § 74.053(d)(West 2013).

[6] TEX.R.CIV.P. 18b; TEX.R.APP.P. 16

9

then pending in the case. Because time sensitive motions were then pending, the parties needed a judge appointed who could act on them. The order rescinding Judge Mazur's appointment to hear the case was signed on the same day that a new appointment was made for Judge Jordan to hear the case. Nothing in the context of these events suggests that Judge Mazur was disqualified from hearing the case up to December 31, 2014.

Crampton focuses on the word "rescinds" in the Texas Supreme Court's order and equates it to the rescission of a contract where the parties are returned to the pre-contract status quo. *See e.g. J.I. Case Threshing Mach. Co. v. St.*, 216 S.W. 426, 429 (Tex.Civ.App.--Dallas 1919, no writ). Even in the contractual setting, however, the term rescission can sometime mean only negating any future obligations. *George H. Finlay & Co. v. Swirsky*, 120 A. 561, 563 (Conn. 1923)(in the context of a particular contract, rescission indicated the parties' intention to terminate and abandon the contract only respecting future performance); *Hurst v. Trow's Printing & Bookbinding Co.*, 22 N.Y.S. 371, 374 (N.Y. Com. Pl. 1893), *aff'd,* 37 N.E. 566 (N.Y. 1894)("Good writers often use the word 'rescind' in the narrower sense of terminate a contract as to future transactions."). As with most things, context is everything. *See U.S. v. Landers*, 128 F.Supp. 97, 104-05 (S.D.N.Y. 1953), *aff'd sub nom. U.S. v. Landers*, 219 F.2d 223 (2d Cir. 1954)("The meaning given the word is invariably dictated by the circumstances surrounding the transaction which gave rise to its use, as well as by the context in which the word is found. The word 'rescind' itself has been refused its technical, legal definition when attendant facts and circumstances indicate the appropriateness of some different meaning."). The authors of the UCC, for instance "take cognizance of the fact that the term 'rescission' is often used by lawyers, courts, and business in many different senses . . . ." John D. Calamari & Joseph M. Perillo, Calamari and Perillo on Contracts § 21.2 (6th ed. 2009). Accordingly, "the word 'rescind'

cannot be wrenched from its context and construed alone in its unqualified, strict, and technical sense, in disregard of the surrounding circumstances, [such that] the word is often, and not improperly, used to mean cutting off, and leaving the parties in the exact conditions then existing." *King v. Oakley*, 434 P.2d 868, 872 (Okla. 1967).[7]

In the context of the Texas Supreme Court's order, we are not convinced that Chief Justice Hecht intended to invalidate all the previous rulings made by Judge Mazur. Rather, the context suggests only that because Judge Mazur was no longer an active sitting judge as of January 1, 2015, a replacement appointment was necessary to complete the case. We overrule Issues One and Two.

**THE PARTIAL SUMMARY JUDGMENT**

In her third issue, Crampton attacks the trial court's decision to grant the partial summary judgment. The trial court granted summary judgment on three of the six grounds asserted. The first and second grounds urged that Crampton violated Rule 1.01(b)(1) and (2), "Competent and Diligent Representation," which obligates a lawyer as follows:

> (b) In representing a client, a lawyer shall not:
>
>> (1) neglect a legal matter entrusted to the lawyer; or
>>
>> (2) frequently fail to carry out completely the obligations that the lawyer owes to a client or clients.
>
> (c) As used in this Rule, "neglect" signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients.

---

[7] In *Trotman v. State*, 06-10-00012-CR, 2010 WL 2680084, at *1 n.2 (Tex.App.--Texarkana July 7, 2010, no pet.)(mem. op.)(not designated for publication), for instance, a trial court had appointed two attorneys to represent an indigent defendant in a death penalty case. When the State later dropped the death penalty count, the trial court "rescinded" the appointment of the second attorney based on statutory language permitting two attorneys only in death penalty cases. *Id*. at *2. The discharged attorney, however, was still to be paid for the time he worked up through the date the appointment was rescinded. *Id*. at *1 n.1.

11

TEX.DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(b). The trial court also granted partial summary judgment on the basis that Crampton violated Rule 1.15, "Declining or Terminating Representation":

> (a) A lawyer shall decline to represent a client or, where representation has commenced, shall withdraw, except as stated in paragraph (c), from the representation of a client, if:
>
> (1) the representation will result in violation of Rule 3.08, other applicable rules of professional conduct or other law.

TEX.DISCIPLINARY RULES PROF'L CONDUCT R. 1.15.

We review a trial court's decision to grant summary judgment *de novo. Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The Commission filed a traditional summary judgment under TEX.R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hosp.*, 148 S.W.3d at 99. A genuine issue of material fact is raised when the non-movant produces more than a scintilla of evidence regarding the challenged element. *Neely*

12

*v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). There is less than a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas, Inc. v. Telesis Operating Co., Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.).

Crampton carries the burden of negating all possible grounds upon which the summary judgment could have been granted. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Ramirez v. First Liberty Ins. Corp.*, 458 S.W.3d 568, 571 (Tex.App.--El Paso 2014, no pet.). This principle is particularly applicable here because the trial court assessed identical sanctions for each of the three disciplinary rules that it held Crampton violated. She must negate each of those violations in order to show reversible error. TEX.R.APP.P. 44.1(a).

As she did below, Crampton's challenge to the partial summary judgement first contends that the Commission's motion "assumes a number of faulty premises." It is not entirely clear from her argument how these "faulty premises" relate to the specific elements of three infractions upon which the Commission obtained summary judgment.[8] Her brief to this Court also minimally raises the question of whether the Commission met its summary judgment burden for the three infractions alleged, and if so, whether she raised a genuine issue of material fact. We approach the trial court's ruling from that perspective.

---

[8] As stated in her response to the summary motion below and brief on appeal, the premises that she contends the Commission did not prove include:

1. That all federal civil rights cases filed in state court are removed to federal court;
2. That an order of "disbarment" means the same thing in Federal Court as in Texas;
3. That Ms. Crampton is unable to litigate federal civil rights cases in state court;
4. That Ms. Crampton is "incompetent" in the area of federal law;
5. That Ms. Crampton is unable to render advice regarding federal law and procedure;
6. That the only option available to Ms. Crampton in this fact situation was to withdraw; and
7. That there is no merit in the risk of sanctions in the Youngs' case in federal court."

The Commission contends that Crampton violated Rule 1.01(b)(1) and (2) by neglecting the matter entrusted to her. Specifically it contends that she failed to respond to the motion to dismiss and summary judgment that had been filed in federal court, failed to appeal the adverse decision on these motions, or otherwise sought to set aside the federal district court's order. The motion is also premised on Crampton's failure to inform the Youngs of her federal disbarment. Crampton responds that the Youngs specifically agreed that no actions would be taken if the case was removed to federal court, and this agreement creates a fact issue as to whether she neglected a legal matter under Rule 101(b). But even assuming such an agreement was reached, negating her lack of action in the removed federal proceeding, we are convinced that the circumstances behind the agreement itself prove a violation of Rule 1.15.

A lawyer should either decline a representation, or withdraw from an on-going representation, if the engagement would result in a violation of any "rule of professional conduct or other law." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15. One of those other rules of professional conduct is found in Rule 1.03 that requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." TEX.DISCIPLINARY RULES PROF'L CONDUCT R. 1.03(b). "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . . ." *Id.* 1.03 cmt.1. While there may be circumstances when a lawyer may withhold information from a client, "withhold[ing] information to serve the lawyer's own interest or convenience" is never proper. *Id.* 1.03 cmt.4. While there are many disputed factual issues between Crampton and the Youngs, one fact is agreed to by all the parties: Crampton never informed the Youngs that she was not

14

licensed to practice in federal court at the time she advised them to default their case if it landed there.

We fail to see how the Youngs could have made an informed decision about foregoing federal court litigation unless they also understood that the person giving them such advice was ineligible to practice there. Sometimes knowledge about the messenger is as important as the message itself. In this case, Crampton advised the Youngs on a course of action requiring them to pay $7,500 to file suit in state court, which was then subject to removal to federal court and per her advice, certain dismissal. The stated reason for the Youngs to simply let their case be dismissed was supposedly a "domestic relations exception" to federal jurisdiction that Crampton claimed could not be overcome. The Youngs, however, had a right to know that Crampton's advice was potentially colored by her own inability to practice in federal court. Because the summary judgment record is undisputed that she was disbarred from federal court, and that she did not inform the Youngs of that fact prior to giving advice on that forum, and because we find as a matter of law that her inability to practice in federal court was essential to an informed decision by the Youngs, we uphold the summary judgment finding that Crampton violated Rule 1.15.

A second obligation created by Rule 1.15 is the duty to withdraw when continued representation would violate some other law. We also believe that the summary judgment record conclusively demonstrates that Crampton had a duty to withdraw from the suit against the Department once it was removed to federal court if she could not appear before that tribunal. Clients are entitled to attorneys who can diligently represent their interests at each stage of a proceeding. *See* TEX.DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(b). Once the case was removed, the Youngs lost that right because Crampton could not legally appear in that court.

15

Her argument that she and the Youngs agreed some two years before the case was removed to simply do nothing is not availing in this context. Crampton contends that the federal litigation was futile based on a domestic relations exception to federal jurisdiction which she attributes to an oral admonishment she received from a federal district judge in 1982. The law of course is never static. In 1992, the Supreme Court decided *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), which limited the domestic relations exception to instances when a federal court is called upon to issue a divorce, alimony, or child custody decree. *Id*. at 706-07. Moreover, several circuits after 1982 held that the domestic relations exception applies to diversity cases, but not to cases arising under the constitution or laws of the United States. *Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 22 (1st Cir.), *cert. denied,* 502 U.S. 886, 112 S.Ct. 244, 116 L.Ed.2d 199 (1991); *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir. 1984); *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir.1983); *Ingram v. Hayes*, 866 F.2d 368, 371 (11th Cir. 1988). The Youngs' suit was removed based on a federal question, and not diversity jurisdiction. The suit itself did not explicitly ask the court to alter or amend a child custody decree.

In 2014, the Fifth Circuit Court of Appeals rejected the application of a broad brushed domestic relations exception in a suit against the Department. *Saloom v. Texas Dept. of Fam. and Child Protective Services*, 578 Fed. Appx. 426, 429-30 (5th Cir. 2014)(unpublished). There, a litigant sued the Department contending that it interfered with an on-going custody battle and inappropriately assisted one spouse in gaining custody rights over the other. The suit sought money damages, and future injunctive relief (but not modification of the actual state court custody decision). A district court had dismissed the suit based on various abstention doctrines, and also on the domestic relations exception to jurisdiction. The Fifth Circuit rejected that claim

16

based on *Ankenbrandt*, noting the domestic relations exception only applies to prevent federal courts from issuing or modifying a divorce, alimony, or child custody decree. *Id.* at 430.

How these issues would have played out in this particular case is not for us to say, nor determinative of the issues on appeal here. We only note that the Youngs were entitled to have counsel who was licensed to pursue these issues at the time they were raised. We also note that the motion to dismiss, and motion for summary judgment filed by the Department and its employees, never raised the domestic relations exception as a basis to dismiss the suit. Instead, the motions were addressed to the legal merits of the suit under each of the federal statutes that Crampton raised in the petition. Those same merits issues would have been present in either state court or federal court. But because Crampton was not allowed to practice in federal court, she could not have filed any responsive pleading to these merit issues. We accordingly agree with the trial court that she had a duty to withdrawal and seek other counsel who could have advised the Youngs once the case was removed. We overrule Issue Three.

**SUMMARY JUDGMENT PROCEDURE
IN DISCIPLINARY PROCEEDINGS**

In her next series of issues, Crampton complains that Texas summary judgment procedure violates her due process rights when utilized in a disciplinary proceeding. Her argument contends that suspending her law license requires a more exacting process than that found in TEX.R.CIV.P. 166a, or higher burden of proof than set out in TEX.R.DISCIPLINARY. P. R. 3.08C. She likens the proceeding to a quasi-criminal matter, thereby precluding the summary judgment process. We disagree on all counts.

Any litigant who is threatened with loss of liberty or property is protected by the Due Process Clause of the federal constitution, and the Texas due-course-of-law protection under the Texas Constitution. U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. These protections

17

extend to lawyers facing judicial disciplinary proceedings. *See In re Ruffalo*, 390 U.S. 544, 550 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)(right to notice); *Comm'n for Lawyer Discipline v. Stern*, 355 S.W.3d 129, 137 (Tex.App.--Houston [1st Dist.] 2011, pet. denied); *Weiss v. Comm'n for Lawyer Discipline*, 981 S.W.2d 8, 14 (Tex.App.--San Antonio 1998, pet. denied). Due process requires, at a minimum, notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *see Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

Disciplinary proceedings are civil in nature, and are accordingly governed by Texas Rules of Civil Procedure. *Kaufman v. Comm'n for Lawyer Discipline.*, 197 S.W.3d 867, 873 (Tex.App.--Corpus Christi 2006, pet. denied), *cert. denied,* 552 U.S. 935 (2007); *McInnis v. State,* 618 S.W.2d 389, 392 (Tex.Civ.App.--Beaumont 1981, writ ref'd n.r.e.); TEX.R.DISCIPLINARY. P. R. 3.08A and B. As with any civil litigant, genuine fact issues must be resolved by the trier of fact. But when the undisputed facts lead to but one conclusion, our rules contemplate the trial court may grant summary judgment. Accordingly, the rule allowing for summary judgment when properly followed neither violates one's right to a jury trial, nor due process. *Fertic v. Spencer*, 247 S.W.3d 242, 251 (Tex.App.--El Paso 2007, pet. denied)(right to jury trial); *Swafford v. Holman*, 446 S.W.2d 75, 80 (Tex.Civ.App.--Dallas 1969, writ ref'd n.r.e.)(due process); *Mills v. Rice*, 441 S.W.2d 290, 291 (Tex.Civ.App.--El Paso 1969, no writ)(due process).

On appeal, Crampton does not complain about any procedural irregularities in the summary judgment below. She does not complain, for instance, about notice of the hearing, or having adequate time to prepare her response. She was in fact able to file a response which included deposition excerpts from the Youngs and other witnesses. She raises no claim that she

was denied an opportunity to conduct discovery, or present evidence. Instead, she appears to claim that a summary judgment would never be appropriate in a disciplinary proceeding. She cites no authority for that proposition, and we find none that sets attorneys apart from the rules affecting all other civil litigants. Issues Four and Five are overruled.

Similarly, Crampton argues that the burden of proof required for a disciplinary proceeding--preponderance of the evidence--is insufficient to justify suspending her license. She cites us to the laws of several states which apparently employ "clear and convincing evidence" as their applicable burden of proof. The burden of proof in Texas, however, is set by our rules as a preponderance of the evidence. *See* TEX.R. DISCIPLINARY. P. R. 3.08C; *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 230 n.1 (Tex.App.--Houston [14th Dist.] 2000, no pet.). While Crampton claims the Texas due-course-of-law and Federal Due Process Clause mandate a higher burden of proof, she advances no substantive arguments or authority in favor of that claim, and we deem the issue waived. *See Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994)(an appellate court has discretion to find an issue is waived due to inadequate briefing); *Torres v. GSC Enterprises, Inc.*, 242 S.W.3d 553, 559 (Tex.App.--El Paso 2007, no pet.)(brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to the record); *City of Midland v. Sullivan*, 33 S.W.3d 1, 10 n.6 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.)(appellant failed to brief complaint and thus waived appellate review). We overrule Issues Six and Seven.

In Issue Eight, Crampton claims that a disciplinary proceeding is quasi-criminal and thus prohibits the use of a summary judgment procedure. We find no authority or development of this argument in her brief, and likewise conclude the issue has been waived. In any event, existing Texas law deems disciplinary proceedings to be civil and thus governed by the Texas

19

Rules of Civil Procedure.  TEX.R.DISCIPLINARY P. R. 3.08(A) and (C); *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 438 (Tex. 1998)("Attorney disciplinary proceedings in Texas are civil . . . so disciplinary rules need not satisfy the higher degree of specificity required of criminal statutes."); *State Bar of Texas v. Evans*, 774 S.W.2d 656, 657 n.1 (Tex. 1989)(specifically disapproving of a "quasi-criminal" description for disciplinary proceedings). We accordingly overrule Issue Eight.

Finally, in Issue Nine Crampton contends that the "present procedures" set out in the disciplinary rules are constitutionally deficient.  We find no specific discussion of any particular rule she complains of, or analysis as to why the rules violate due process.  Likewise, we find this issue waived and overrule Issue Nine.  Having overruled all of Crampton's Issues on appeal, we affirm the judgment below.

December 14, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

20