In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00444-CV
_____

**KRISTIN D. WILKINSON, Appellant**

**V.**

**COMMISSION FOR LAWYER DISCIPLINE, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-09-10238-CV**

**MEMORANDUM OPINION**

Kristin D. Wilkinson appeals a final judgment of disbarment following a jury

trial. *See* Tex. Rules Disciplinary P. R. 3.15 (Feb. 26, 1991, Oct. 9, 1991),

*renumbered eff.* June 1, 2018.[1] In a pre-trial order granting a motion for partial

---

[1] Current version *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B
(West 2019). Throughout this Opinion, we apply the Rules of Disciplinary
Procedure in effect on the date the disciplinary proceeding commenced. *See* Tex.
Rules Disciplinary P. R. 1.04 (Feb. 26, 1991, Oct. 9, 1991), *amended eff.* Jan. 1,
2004.

1

summary judgment, the trial court ruled that as a matter of law, Wilkinson violated a disciplinary judgment when she drafted and executed a trust document and powers of attorney while actively suspended from the practice of law. *See* Tex. Disciplinary Rules Prof'l Conduct R. 8.04(a)(7) (Oct. 17, 1989), *amended eff.* Oct. 1, 1994, *amended eff.* May 1, 2018.[2] The jury found that Wilkinson engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and that Wilkinson committed a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in other respects. *See id.* R. 8.04(a)(2), (3) (Oct. 17, 1989), amended eff. Oct. 1, 1994, amended eff. May 1, 2018. In the final judgment, the trial court disbarred Wilkinson as a sanction for her professional misconduct. The three issues presented by Wilkinson in her brief contend: (1) the trial court erred by denying Wilkinson's plea to the jurisdiction; (2) there were defects in the charge and legally and factually insufficient evidence to support the jury's verdict; and (3) the trial court erred by granting the Commission's partial summary judgment, in denying Wilkinson's motion for reconsideration, and in denying her motion for summary judgment and her requests for jury questions.

---

[2] Current version *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2019) (Tex. State Bar R. art. X § 9).

2

**Appellant's Plea to the Jurisdiction**

Wilkinson filed a post-judgment plea to the jurisdiction in which she argued that neither the Commission nor the lawyer who filed a grievance had standing to make allegations against Wilkinson on behalf of the beneficiary of the trust. Wilkinson further argued that the trial court interfered with the jurisdiction of the 190th District Court of Harris County where the beneficiary of the trust filed an action against Wilkinson. Additionally, Wilkinson challenged the Commission's jurisdiction over the acts of a trustee in the administration of a trust when that trustee was not admitted to practice law in Texas. The trial court signed an order denying the plea to the jurisdiction on November 13, 2017.

We review a challenge to the trial court's subject matter jurisdiction *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Where a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause, construing the pleadings liberally in favor of the plaintiff and considering the plaintiff's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the

trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. The fact finder will resolve any fact question regarding the jurisdictional issue. *Id*. at 227–28.

A court's subject-matter jurisdiction traditionally consists of the power, conferred by constitutional or statutory provision, to decide the kind of claim alleged in the plaintiff's petition and to grant relief. *Sierra Club v. Tex. Nat. Res. Conservation Comm'n*, 26 S.W.3d 684, 687 (Tex. App.—Austin 2000), *aff'd on other grounds*, 70 S.W.3d 809 (Tex. 2002). The Texas Supreme Court regulates the practice of law in Texas, exercises administrative control over the state bar, and adopts rules for the discipline of state bar members. *In re State Bar of Texas*, 113 S.W.3d 730, 732 (Tex. 2003); *see also* Tex. Gov't Code Ann. § 81.011 (West 2013). Each attorney admitted to practice in Texas is subject to the disciplinary jurisdiction of the Supreme Court and the Commission. Tex. Gov't Code Ann. § 81.071 (West 2013). The Commission files the disciplinary petition in a district court of the county of the attorney's principal place of practice. *See* Tex. Rules Disciplinary P. R. 3.03. (Feb. 26, 1991, Oct. 9, 1991), *amended eff.* Oct. 1, 1994, *amended eff.* Jan. 1, 2004, *amended eff.* Oct. 1, 2012. The county in which the disciplinary action is filed is a matter of venue, not jurisdiction, and can be waived. *Acevedo v. Comm'n for Lawyer Discipline*, 131 S.W.3d 99, 103–04 (Tex. App.—San Antonio 2004, pet. denied). Furthermore, the Commission acts not as or on behalf of a private litigant to redress

4

a private wrong, but as an administrative agency under the administrative control of the Supreme Court to hold an attorney accountable for professional misconduct. *Id.* at 104.

On September 1, 2016, the Supreme Court appointed a judge to preside over the disciplinary action against Wilkinson to be filed in a district court of Montgomery County, Texas. The Commission filed the petition in a Montgomery County district court on September 2, 2016. *See* Tex. Rules Disciplinary P. R. 3.01. (Feb. 26, 1991, Oct. 9, 1991), *amended eff.* Jan. 1, 2004, *amended eff.* Oct. 1, 2012. In its petition, the Commission alleged that Wilkinson was a licensed attorney and a member of the State Bar of Texas. The Commission alleged: (1) in 2011, Wilkinson received a judgment of partially probated suspension; (2) in 2013, the Texas Board of Disciplinary Appeals issued a judgment revoking her probation and ordered that Wilkinson be actively suspended from the practice of law from July 26, 2013, to July 25, 2015; (3) Wilkinson continued to practice law while on active suspension when in August 2014, she drafted and had executed an Irrevocable Living Trust Agreement and General Power of Attorney, by which the beneficiary transferred all of her assets to a trust with Wilkinson designated as the sole trustee; (4) on April 24, 2015, Wilkinson was removed as trustee in a proceeding filed in Probate Court Number One of Harris County; and (5) approximately $650,000 of liquid assets

5

diminished to about $200,000 while Wilkinson was trustee. The Commission's petition invoked the trial court's subject matter jurisdiction to adjudicate the disciplinary action against Wilkinson as an attorney licensed in Texas in the exercise of the Supreme Court's administrative control over Texas attorneys.

Wilkinson filed a general denial without seeking a transfer to another county. Wilkinson signed her original answer as "The Wilkinson Law Firm, Kristin Wilkinson, Attorney and Counselor at Law, by: /s/ Kristin Wilkinson" under the same State Bar Number as alleged by the Commission in its petition. Although she argued in the trial court and in her appeal that the actions for which she was disciplined were not taken in her capacity as an attorney, when the Commission filed the petition at the direction of the Supreme Court, Wilkinson was an attorney licensed in Texas subject to the disciplinary jurisdiction of the Supreme Court and the Commission. *See* Tex. Gov't Code Ann. § 81.071. Likewise, as an attorney, Wilkinson was subject to the Texas Rules of Disciplinary Procedure and the Texas Disciplinary Rules of Professional Conduct. *Id.* § 81.072(d) (West Supp. 2018). Furthermore, the Commission filed the disciplinary petition as an administrative agency of the Supreme Court, not on behalf of the beneficiary of the trust or the person who initiated a grievance. *See Acevedo*, 131 S.W.3d at 104. As an exercise of the Supreme Court's administrative control to hold an attorney accountable for

6

professional misconduct, the disciplinary action did not interfere with the district court's jurisdiction over the litigation relating to the trust. *See id.*; *see generally Favaloro v. Comm'n for Lawyer Discipline*, 13 S.W.3d 831, 836 (Tex. App.—Dallas 2000, no pet.) (the trial court for the disciplinary proceeding did not interfere with the jurisdiction of the court in which the lawyer filed a suit against the state bar and the grievance committee). We conclude the trial court had the power to both try and enter judgment in the disciplinary action. *See* Tex. Rules Disciplinary P. R. 3.03, 3.09 (Feb. 26, 1991, Oct. 9, 1991). We overrule issue one.

## Charge Error and Sufficiency of the Evidence

### 1. Charge Error

Wilkinson's second issue complains of defects in the jury charge and claims the evidence is legally and factually insufficient to sustain the jury's verdict. The trial court submitted two questions to the jury. Question One asked, "Did Kristin Wilkinson engage in conduct involving dishonesty, fraud, deceit or mis-representation?" The trial court instructed the jury that, "[t]he term 'fraud' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information." The trial court instructed the jury that

> [t]he term "misrepresentation" may be defined as one or both of the
> following: 1) The act or an instance of making a false or misleading

7

assertion about something, usually with the intent to deceive. The word denotes not just written or spoken words but also any other conduct that amounts to a false assertion. 2) The assertion so made; an incorrect, unfair, or false statement; an assertion that does not accord with the facts.

Question Two asked, "Did Kristin Wilkinson commit a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in other respects?" In connection with Question Two, the trial court instructed the jury that

[i]t is a "criminal act" to intentionally, knowingly, or recklessly misapply property held as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

A "fiduciary" includes a trustee, an attorney in fact or agent appointed under a durable power of attorney, or any other person acting in a fiduciary capacity.

A person acts in a "fiduciary capacity" when the business she transacts, or the money or property which she handles, is not hers or for her own benefit, but for the benefit of another person with whom she has a relationship implying and necessitating great confidence and trust and a high degree of good faith.

A person acts "intentionally" with respect to the nature or result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result.

A person acts "knowingly" with respect to the nature of or the circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist or that her conduct is reasonably certain to cause the result.

A person acts "recklessly" with respect to circumstances surrounding her conduct or the result of her conduct when she is aware of but

8

consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

At Wilkinson's request, the trial court instructed the jury that

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

A trustee must administer the trust solely in the interest of the beneficiary.

The trustee must administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust.

A trustee must take all reasonable steps to secure possession of, and maintain control over, the trust property, and use the level of care and skill a person of ordinary prudence would use to preserve trust property. This duty applies not only to tangible property, but also to other rights of the trust estate. For example, a trustee must take reasonable actions to collect claims due to the trust estate.

Although a trustee may deposit trust funds in a bank or other financial institution, the trustee must use reasonable care in selecting the institution and must designate all such deposits as trust deposits. The trustee may not subject the property to unreasonable restrictions on withdrawal or leave it in non-interest bearing accounts for unduly long periods of time. Pending investment, distribution, or payment of debts, a trustee is authorized to deposit trust funds in a bank that is subject to supervision by state or federal authorities.

9

A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries.

A beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later. If the trustee fails or refuses to deliver the statement on or before the 90th day after the date the trustee receives the demand or after a longer period ordered by a court, any beneficiary of the trust may file suit to compel the trustee to deliver the statement to all beneficiaries of the trust. The court may require the trustee to deliver a written statement of account to all beneficiaries on finding that the nature of the beneficiary's interest in the trust or the effect of the administration of the trust on the beneficiary's interest is sufficient to require an accounting by the trustee. However, the trustee is not obligated or required to account to the beneficiaries of a trust more frequently than once every 12 months unless a more frequent accounting is required by the court.

Unless the terms of the trust provide otherwise, the trustee is entitled to reasonable compensation from the trust for acting as trustee.

A trustee may discharge or reimburse herself from trust principal or income or partly from both for advances made for the convenience, benefit, or protection of the trust or its property or expenses incurred while administering or protecting the trust.

The trial court refused Wilkinson's request to include the following questions:

> QUESTION ___
> On the occasion in question was Kristin Wilkinson employed as an employee or contractor by Attorney Larry Longer?
> Answer: _____
> If you answered "Yes" to the previous question, then do not answer the remaining questions. Otherwise, answer the remaining questions.
>
> QUESTION __

10

Did Kristin Wilkinson commit theft?

In answering this question, do not consider any conduct of Kristin Wilkinson that amounts to a duty of Attorney Larry Longer in supervising Kristin Wilkinson or conduct not required by the trust instrument.

Answer "Yes" or "No." Answer: _____

QUESTION __

Do you find by clear and convincing evidence that Kristin Wilkinson committed fraud?

In answering this question, do not consider any conduct of Kristin Wilkinson that amounts to a duty of Attorney Larry Longer in supervising Kristin Wilkinson or conduct not required by the trust instrument.

Answer: _____

The trial court refused Wilkinson's requests for additional instructions regarding three subjects: (1) instructions and definitions relating to professional misconduct, supervised lawyers and non-lawyer assistants, and unauthorized practice of law; (2) instructions regarding trustees; and (3) instructions and definitions about theft and misrepresentation.

In her appellate brief, Wilkinson suggests the trial court improperly used broad-form submissions to the jury. "When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000). Likewise,

11

when over the appellant's objection the trial court submits a broad-form question combining factually supported and factually unsupported theories of recovery, the error will be harmful unless we are reasonably certain that the jury was not significantly influenced by erroneously submitted questions. *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 226 (Tex. 2005).

The Commission argues Wilkinson failed to preserve error on a complaint of broad-form submission. Wilkinson did not argue to the trial court that the charge commingled factually supported and factually unsupported claims as to Question One, but she did request a jury question on whether she committed fraud. In her appellate brief, Wilkinson argues that evidence of expenditures alone will not support a finding of dishonesty, fraud, deceit, or misrepresentation. She argues the Commission failed to prove that her expenditures from the trust were contrary to the trust agreement or unaccounted for by Wilkinson. In the arguments in her brief, Wilkinson does not differentiate the Commission's fraud theory from theories involving dishonesty, deceit, or misrepresentation. Wilkinson has not shown that Question One combines a theory that has support in the evidence with a theory without evidentiary support. *See Romero*, 166 S.W.3d at 226. Similarly, Wilkinson requested that the trial court submit a question on whether she committed theft, but in her appeal, she has not shown that the trial court combined a factually supported

theory with a factually unsupported theory in its submission on Question Two. *See id.*

Wilkinson argues the trial court erred by failing to include her requested instructions relating to the duties of a trustee and management of the trust. The trial court refused Wilkinson's requests for instructions regarding: (1) a trustee's duty to administer a trust in good faith; (2) a trustee's duty to defend; (3) a requirement of a trustee to give bond; (4) the rights of a successor trustee; (5) a trustee's accountability to a beneficiary; (6) a trustee's duty to invest prudently; (7) the prudent investor rule; (8) the standard of care for a trustee; (9) diversification of investments; (10) a trustee's duty to make trust property productive; (11) a trustee's duties at inception of trusteeship; (12) a trustee's duty of impartiality; (13) investment costs; (14) compliance with the prudent behavior rule; (15) delegation of investment and management functions; (16) a trustee's actions taken prior to knowledge or notice of facts; (17) relieving a trustee of liability; (18) application of the Texas Trust Act; and (19) a trustee's right to exoneration or reimbursement for a tort committed while properly engaged in a business activity for the trust.

The Texas Rules of Civil Procedure require a trial court to submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. Rule 277 "affords the trial court considerable discretion in

13

deciding what instructions are necessary and proper in submitting issues to the jury." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex. 1997). "When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict." *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000). The trial court's instructions to the jury described the trustee's duty to administer the trust solely in the interest of the beneficiary, to administer the trust as a prudent person would, to take reasonable steps to maintain control over the trust property, to preserve it using ordinary prudence, to use reasonable care in depositing trust funds, to invest and manage trust assets solely in the interest of the beneficiary, and to account for transactions. Furthermore, the trial court instructed the jury on the trustee's entitlement to reasonable compensation and reimbursement for expenses incurred while administering or protecting the trust. The charge sufficiently apprised the jury of the duties of a trustee and management of a trust without the additional instructions requested by Wilkinson. We conclude the trial court did not abuse its discretion. *See Nicolau*, 951 S.W.2d at 451.

Wilkinson argues that the jury's answer to Question One is immaterial and should have been disregarded by the trial court. The jury was asked if it found that Wilkinson engaged in conduct involving dishonesty, fraud, deceit or

14

misrepresentation. Wilkinson contends the question improperly required the jury to determine a question of law and claims she submitted questions in substantially correct form. The questions requested by Wilkinson would have required the jury to disregard any conduct of hers that occurred while she was employed by an attorney or that the attorney had a duty to supervise. This is not an accurate statement of the law. A lawyer is bound by the rules of professional conduct and is responsible for her own conduct. *Crampton v. Comm'n for Lawyer Discipline*, 545 S.W.3d 593, 598 (Tex. App.—El Paso 2016, pet. denied); *see also* Tex. Disciplinary Rules Prof'l Conduct R. 8.05(a) (Oct. 17, 1989), *amended eff.* Mar. 31, 1995. (A lawyer is "answerable for his or her conduct occurring in this state[.]")); Tex. Gov. Code Ann. § 81.072(d). A lawyer is not relieved from compliance with the Rules of Professional Conduct because the lawyer acted under the supervision of an employer or other person. *See* Tex. Disciplinary Rules Prof'l Conduct R. 5.02 and cmt (Oct. 17, 1989).

Wilkinson argues the jury's answer to Question Two is also "immaterial" because "[i]nstructing the jury on an unindicted criminal offense to which the court cannot pronounce a proper judgment violates due process guarantees." Compulsory disciplinary proceedings occur when a lawyer is convicted of an intentional crime. *In re Caballero*, 272 S.W.3d 595, 597 (Tex. 2008). Compulsory discipline for an intentional crime turns solely on the record of conviction. *In re Lock*, 54 S.W.3d

15

305, 306–07 (Tex. 2001). Absent a conviction for an intentional crime, the standard disciplinary proceedings such as the proceedings brought against Wilkinson apply. *See id.* Attorney disciplinary proceedings are civil matters, not criminal prosecutions. *See Capps v. State*, 265 S.W.3d 44, 50 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Because the Commission did not bring compulsory discipline proceedings against Wilkinson, it was not required to prove that Wilkinson had been convicted. *See* Tex. Rules Disciplinary P. R. 8.01 (Feb. 26, 1991, Oct. 9, 1991), *amended eff.* Oct. 1, 1994 ("Proceedings under this part are not exclusive in that an attorney may be disciplined as a result of the underlying facts as well as being disciplined upon the conviction or probation through deferred adjudication.").

Wilkinson argues that by submitting a broad form question that asked the jury if she "committed a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in other respects" and by refusing her requested definitions of "professional misconduct", "intentional crime", and "serious crime", the trial court did not require the Commission to prove that she committed a misapplication of fiduciary property. The trial court instructed the jury that

> [i]t is a "criminal act" to intentionally, knowingly, or recklessly misapply property held as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

16

A "fiduciary" includes a trustee, an attorney in fact or agent appointed under a durable power of attorney, or any other person acting in a fiduciary capacity.

A person acts in a "fiduciary capacity" when the business she transacts, or the money or property which she handles, is not hers or for her own benefit, but for the benefit of another person with whom she has a relationship implying and necessitating great confidence and trust and a high degree of good faith.

The instructions tracked the language that describes the criminal offense of misapplication of fiduciary property. *See* Tex. Penal Code Ann. § 32.45 (West Supp. 2018). Under the Rules of Disciplinary Procedure, both "Intentional Crime" and "Serious Crime" include misapplication of fiduciary property. *See* Tex. Rules Disciplinary P. R. 1.06 (Feb. 26, 1991, Oct. 9, 1991), *amended eff.* Jan. 1, 2004, *amended eff.* Sept. 1, 2008, *amended eff.* Nov. 1, 2013, *amended eff.* June 1, 2018.

Wilkinson complains that the instruction lacked a definition of "misapply" found in Penal Code section 32.45(a)(2), but she did not request its inclusion in the charge. Because she did not make the trial court aware of the complaint, Wilkinson did not preserve error for appellate review. *See State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).

"Controlling issues of fact must be submitted to the jury and may be submitted to the jury by questions, instructions, definitions, or through a combination of them." *McIntyre v. Comm'n for Lawyer Discipline*, 247 S.W.3d 434, 443 (Tex. App.—

17

Dallas 2008, pet. denied). The questions presented to the jury in the charge tracked the language found in the subsections of the Rule of Professional Conduct that the Commission alleged Wilkinson violated. *See* Tex. Disciplinary Rules Prof'l Conduct R. 8.04(a)(2) and (3). Because the questions and the accompanying instructions and definitions submitted in the jury charge fairly placed the disputed issues before the jury, we conclude the trial court did not abuse its discretion.

**2. Sufficiency of the Evidence**

Wilkinson challenged the legal and factual sufficiency of the evidence in her motion for new trial.

> Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016) (citation omitted). As the sole judges of the credibility of the witnesses and the weight to give their testimony, the jurors may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). "Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses." *Id*. at 820. But "they are not free to believe testimony that is conclusively negated by undisputed facts." *Id.* In our appellate review, we "credit

18

favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*

When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appellant did not have the burden of proof at trial, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 120 (Tex. App.—Beaumont 2005, pet. denied). When reviewing a factual sufficiency challenge, we consider and weigh all of the evidence in support of and contrary to the jury's finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We only set aside a finding if it "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

William McCulloch, Jr. testified that a Harris County Probate Court appointed him as guardian ad litem for J.G.[3] after Wilkinson, acting in her capacity as trustee, filed a notice with the court asking for a determination of J.G.'s competency.

---

[3] In this opinion, we refer to the trust beneficiary by her initials to protect her privacy.

19

Wilkinson gave McCulloch a copy of the trust agreement that was missing pages 29 through 33. The trust agreement did not require Wilkinson to post a bond. After McCulloch discovered that Wilkinson was managing J.G.'s assets of approximately $800,000, the probate court ordered Wilkinson to post a $350,000 bond. After Wilkinson did not post the bond and filed a notice of nonsuit of the guardianship proceeding, on March 26, 2015, the probate court removed Wilkinson as trustee and appointed Kyle Frazier as successor interim trustee.

Kyle Frazier, an attorney, testified that J.G. and her family had been his clients for many years. In December 2014, J.G. came to see him and hired him to represent her because she was upset that Wilkinson had taken control of her assets and was not giving her much money. On February 4, 2015, Frazier drafted and filed an executed revocation of a power of attorney J.G. had given Wilkinson and wrote a demand letter on J.G.'s behalf asking Wilkinson to resign as trustee and reasserting J.G.'s previous request for an accounting of the trust's assets and all of Wilkinson's actions from August 20, 2014. Wilkinson responded by notifying the Harris County Probate Court that J.G. may not have the capacity to retain Frazier and requesting a determination of J.G.'s need for a court-appointed ad litem. Wilkinson wrote to Frazier and advised him that the revocation had no effect on her powers of trustee and that she refused to turn over assets or information.

20

Frazier stated that when he took over as successor trustee, approximately $200,000 remained in J.G.'s IRA account, Wilkinson turned over a cashier's check in the amount of $8,000, and there was approximately $20,000 in cash on hand. In September 2014, $30,000 was deposited in a trust account. By March 2015, Wilkinson had removed all but approximately $4,300 from that same account. A second trust account had a balance of approximately $83,500 in October 2014, and approximately $500 remained when Wilkinson was removed as trustee. J.G.'s IRA account had a balance of approximately $375,000 in October 2014, and approximately $252,000 in March 2015. The withdrawals from the IRA account incurred an early withdrawal tax penalty. According to Frazier, four early withdrawals between December and April totaled $196,000.

According to Frazier, while Wilkinson served as trustee from late August 2014 through April 2015, approximately $190,000 was disbursed from checking accounts held for the benefit of J.G. In at least ten instances, there were insufficient funds in the account to cover a check. Wilkinson wrote checks to herself: (1) on August 29, 2014, $3,500 for "trust expenses reimbursement, and fees"; (2) on October 24, 2014, $5,000 for "one quarter fees"; (3) on January 3, 2015, $7,000 for "trustee"; (4) on January 27, 2015, $5,600 for "fees" (5) on February 11, 2015, $20,692 for "trust services"; (6) on February 28, 2015, $5,600 for "fees"; (7) on

March 13, 2015, $2,225 for "trust services fees"; (8) on March 26, 2015, $15,000 for "fees"; and (9) on April 5, 2015, $25,000 for "trust services". According to Frazier, $89,617 is not the type of fee a trustee receives for less than eight months of work. Frazier stated that he generally charges about $10,000 per year for trustee services. According to Frazier, most banks base their trustee services on the value of the assets and the type of assets, charging a minimum fee of perhaps one percent. At the time of the trial, Frazier had been serving as the successor trustee for approximately two years and three months.

In addition to the checks Wilkinson wrote to herself, Frazier identified a number of checks payable to cash: (1) on October 16, 2014, $1,500 for "fees"; (2) on December 7, 2014, $1,700 for "fees"; (3) on December 20, 2014, $1,000 for "fees"; (4) on December 29, 2014, $1,500 for "fees"; (5) on January 6, 2015, $2,500 for "fees"; and (6) on January 30, 2015, $3,500 for "fees expense". Frazier stated that Wilkinson gave him no records to account for her having expended $11,700 in cash. In addition to the checks payable to Wilkinson or to cash, Wilkinson made several cash withdrawals: (1) on October 1, 2014, $1,000; (2) on October 10, 2014, $2,500; and (3) on October 18, 2014 $2,000. According to Frazier, Wilkinson never explained the withdrawals to him.

Kelly Kearney, a financial advisor with Morgan Stanley, testified that they received a letter of instruction dated September 9, 2014, in which J.G. and Wilkinson requested that all of J.G.'s assets, which included one taxable account and several individual retirement accounts, be transferred into an irrevocable trust account with Wilkinson as trustee. She consulted the compliance officer and a decision was made not to follow the instructions in the letter. Another firm initiated a transfer of the accounts with a value of approximately $657,000 out of Morgan Stanley.

Wilkinson called eight witnesses in her defense. Ginevra Hess, a technician at a 24-hour emergency and critical care veterinary facility, testified that she personally boarded one of J.G.'s dogs for $50 per day and arranged for a professional trainer to work with the dog. Hess eventually adopted the dog to a friend. The dog arrived at the veterinary facility about January 10, 2015, and the dog was adopted sometime in May 2015. Wilkinson paid her using trust funds.

Terry Lindsey, a substandard building specialist for the City of Baytown, testified that in June 2014, he inspected and photographed J.G.'s premises. Copies of the photographs, which showed the poor condition of the premises, were admitted in the trial.

Yolanda Hernandez, a real estate agent, testified that she assisted Wilkinson's attempt to find a home with a homeowners' association that would accept J.G.'s three pets. She located a home, but J.G. did not lease it.

Brent Haynes, an assistant district attorney of the Galveston County District Attorney's Office, testified that an attorney named Larry Longer represented J.G. in an animal cruelty case. J.G.'s case resulted in the impoundment and forfeiture of 28 animals. He recalled seeing Wilkinson at a pretrial conference where Larry Longer appeared for J.G. and requested a 90-day continuance so J.G. could enter a 90-day treatment program. He recalled that Longer introduced Wilkinson as the trustee and that she presented the case to the court. Haynes and Longer worked out a plea agreement in principle; Haynes sent Longer a proposed agreed judgment but did not hear from Longer. Another attorney assumed J.G.'s defense and settled both the criminal case and the civil forfeiture of the animals. On October 27, 2014, J.G. agreed to pay approximately $45,000 for the animals' expenses and forfeited 25 of the 28 animals.

Gerard Duhon, an engineer who works with residential foundations, testified that in February 2015, his company prepared a report for a home that belonged to J.G. The slab had not failed but he recommended a repair to improve its resale value.

He charged $250 and did not perform any other work on the property. Wilkinson paid the invoice with trust account funds.

Amy Garrou, a veterinarian, testified that her practice took over the care of three animals for J.G. Wilkinson and J.G. were both present when Dr. Garrou examined the animals.

Michael Walker, the owner of a landscaping business, removed trees from J.G.'s Baytown veterinary clinic and mowed the lawn biweekly. In a separate project in Pasadena that took two to two-and-one half weeks, he removed an oak tree that had fallen on a covered patio deck, ground tree stumps, and removed debris. Walker estimated that he was paid $14,000. Wilkinson paid him using trust account funds.

Stephen Desselle testified that Wilkinson hired his former company, College Hunks Hauling, to haul away junk from J.G.'s homes and clinic. Desselle charged approximately $11,000 in January 2015, and he was paid out of the trust account.

In the charge to the jury, the trial court asked the jury "Did Kristin Wilkinson engage in conduct involving dishonesty, fraud, deceit or misrepresentation?" The trial court instructed the jury that fraud denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information. The trial court instructed the jury that "Misrepresentation" required making a false or misleading assertion about something, usually with the intent to

25

deceive, that does not accord with the facts. The jury found that Wilkinson engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

The trial court asked the jury, "Did Kristin Wilkinson commit a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in other respects?" The trial court instructed the jury that (1) it is a "criminal act" to intentionally, knowingly, or recklessly misapply property held as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held, (2) a "fiduciary" includes a trustee, an attorney in fact or agent appointed under a durable power of attorney, or any other person acting in a fiduciary capacity, and (3) a person acts in a "fiduciary capacity" when the business she transacts, or the money or property which she handles, is not hers or for her own benefit, but for the benefit of another person with whom she has a relationship implying and necessitating great confidence and trust and a high degree of good faith. The jury found Wilkinson committed a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in other respects.

In her appeal, Wilkinson argues that without testimony from Wilkinson or J.G., the Commission presented no probative evidence of breach of the trust agreement, produced no witness with personal knowledge concerning the purpose of the expenditures from the trust, and failed to prove that the checks reflecting

26

"fees" were made contrary to an agreement or were improper. Wilkinson argues there is no probative value to evidence of expenditure alone, without showing knowledge of factual substantiation or explanation. She claims references to "fees" on the checks is not determinative because a notation on a check does not prove its application. She claims the Commission had no evidence of her intent to defraud or of a deception practiced on a person to whom a duty is owed. She argues no inference that her conduct was wrongful can be reasonably drawn from the evidence.

The factual dispute before the jury was not whether Wilkinson breached the trust agreement but whether she engaged in professional misconduct by misapplying fiduciary property or by engaging in dishonest or fraudulent conduct. Wilkinson does not dispute that she was a fiduciary or that she was acting in a fiduciary capacity when she conducted financial transactions out of the trust account. Wilkinson took funds for herself that she held as a fiduciary without invoicing or otherwise justifying the expenditure. As a lawyer and as the successor trustee, Frazier had both expertise and personal knowledge of a reasonable fee for trustee services for J.G.'s living trust and the jury could accept as credible Frazier's assertion that the amount of money Wilkinson took for herself was far more than could be justified.

The jury could discern from her witnesses' testimony and the records of her financial transactions what actions Wilkinson had engaged in for the benefit of J.G.

For instance, Wilkinson arranged for legal representation, medical care, animal care, debris removal, and paid property taxes. From the financial records and witness testimony, the jury could find that the funds Wilkinson took for her own benefit vastly outweighed the value of the efforts she expended in her role as trustee.

The evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Wilson*, 168 S.W.3d at 827. Furthermore, the evidence is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dyson*, 692 S.W.2d at 457. We hold the evidence is legally and factually sufficient. Accordingly, we overrule issue two.

**Summary Judgment**

In her third and final issue, Wilkinson challenges the trial court's summary judgment rulings. In our *de novo* review of a summary judgment, "[w]e review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). "If the party

28

opposing a summary judgment relies on an affirmative defense, [she] must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). In a no-evidence motion for summary judgment, the movant contends that no evidence supports one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). "To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641–42 (Tex. 2015).

The trial court ruled that that the summary judgment evidence conclusively established that by drafting the trust agreement and power of attorney, Wilkinson practiced law while a judgment of the Board of Disciplinary Appeals prohibited her from practicing law in Texas. The trial court ruled that Wilkinson failed to raise a fact issue on her affirmative defenses that when she drafted the trust agreement and

the power of attorney she was acting as a paralegal under the supervision of Larry Longer, or that she has a good faith belief that the suspension of her law license was invalid. The trial court granted the Commission's motion for partial summary judgment concluding that Wilkinson committed an act of professional misconduct by violating a disciplinary judgment when she practiced law while on active suspension.

The trial court denied Wilkinson's motion for summary judgment on the Commission's claims that she engaged in professional misconduct by Rule 8.04(a)(2), (3) and (7) of the Texas Disciplinary Rules of Professional Conduct. First, the trial court denied Wilkinson's motion for summary judgment on the Commission's allegation that she violated Rule 8.04(a)(7) because the trial court granted the Commission's motion for partial summary judgment on grounds that the summary judgment evidence conclusively established that Wilkinson practiced law while a judgment of the Board of Disciplinary Appeals prohibited her from practicing law in Texas. Second, the trial court denied Wilkinson's motion for summary judgment on the Commission's allegation that Wilkinson violated Rule 8.04(a)(2), which prohibits a lawyer from committing a serious crime or any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, because Wilkinson failed to identify which element of

30

the Commission's claim lacked evidentiary support. The trial court further found that the summary judgment evidence raised a fact issue on whether Wilkinson committed the criminal offense of misapplication of fiduciary property. Third, the trial court denied Wilkinson's motion for summary judgment on the Commission's allegation that Wilkinson violated Rule 8.04(a)(3), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, because Wilkinson failed to identify which element of the claim had no evidence. Additionally, the trial court ruled that Wilkinson was not entitled to summary judgment because Wilkinson failed to establish that she is entitled to judgment as a matter of law. The trial court submitted the Commission's allegations that Wilkinson violated Rule 8.04(a)(2) and (3) to the jury, which made an affirmative finding as to those allegations.

The trial court incorporated its partial summary judgment into the final judgment. In its final judgment, the trial court found that Wilkinson committed professional misconduct and that she violated Rule 8.04(a)(2), (3) and (7) of the Texas Disciplinary Rules of Professional Conduct and that the imposed disbarment is an appropriate sanction for Wilkinson's professional misconduct.

In her appellate brief, Wilkinson argues that working as a paralegal is not the practice of law, and she claims the summary judgment record contains evidence that

she had a good faith belief that there was no valid prohibition on her practicing law. She argues the billing records in the summary judgment record fail to conclusively establish that she practiced law and raise a fact issue that she was performing work as a paralegal for Larry Longer when she drafted the trust agreement and the power of attorney.

The summary judgment evidence includes Wilkinson's invoice to J.G. for fees incurred from August 3, 2014 through August 19, 2014, before execution of the trust agreement and power of attorney vested Wilkinson with powers as a trustee and attorney-in-fact. Wilkinson charged J.G. $350 per hour to "review and analyze trust and living estate issues and recent opinions relating to preferred selection of form of trust for JGB", "Begin drafting of Trust Agreement", "Draft and revise Trust Agreement", "Final drafting of trust before transmittal to client for review", "Office conference with [J.G.] regarding trust revisions and disposition of her property to trust", and "Draft and revise final version of trust." Nothing in the record implies that Longer supervised Wilkinson's drafting of the trust agreement and power of attorney.

Wilkinson asserted that she worked as a paralegal for an attorney while she was suspended from the practice of law—in her motion for summary judgment, in her response to the Commission's motion for summary judgment, in her

supplemental answer, in her motion for leave to submit additional evidence, and in her motion to reconsider—but she failed to raise a fact issue as to any of these assertions because she failed to file a summary judgment affidavit. *See Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660–661 (Tex. 1995). Wilkinson complains that the trial court shifted the burden of proof from the Commission to Wilkinson, but in summary judgment procedure, if the party opposing a summary judgment relies on an affirmative defense, she must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *See Brownlee*, 665 S.W.2d at 112.

In her appellate brief, to support her argument that a question of fact exists regarding whether she was practicing law when she drafted the trust documents or was merely performing the activities of a paralegal under Longer's supervision, Wilkinson relies on two documents that she offered, and the trial court admitted in the later sanctions hearing. Assuming without deciding that we may consider these documents, at least to the extent that they address her argument that the trial court erred by denying her motion for new trial, we conclude that the documents support rather than undermine the trial court's judgment. Respondent's Exhibit Number 20 is an invoice from "Kristin Wilkinson, On Behalf of Larry G. Longer, P.C." that

reflects work Wilkinson performed between July 25, 2014, and August 11, 2014, on the appeal of the justice court order of dispossession of J.G.'s animals. Most of the work was billed at a rate of $54.53 per hour. No mention of Wilkinson's work on the trust agreement or the power of attorney appears anywhere in the document. Longer paid Wilkinson for the work reflected in the invoice. Respondent's Exhibit Number 26 contains Longer's accounting of his work for J.G. and shows that Longer mailed Wilkinson a refund-of-retainer check payable to J.G on September 8, 2014. No time for drafting, supervising, or reviewing the drafting, preparation and execution of the trust agreement and power of attorney appears anywhere on Longer's description of his efforts on J.G.'s behalf, nor did he include in his accounting any of the work Wilkinson invoiced to J.G. on August 20, 2014. We conclude the Commission conclusively established that Wilkinson practiced law while a judgment of the Board of Disciplinary Appeals prohibited her from practicing law in Texas.

In her appeal, Wilkinson argues that the trial court erred by refusing to grant leave to file Wilkinson's supplemental motion for summary judgment and her motion to submit additional summary judgment evidence.[4] Wilkinson filed her

---

[4] The trial court granted Wilkinson's motion for leave to supplement her answer with her affirmative defenses.

34

supplemental motion for summary judgment on April 11, 2017, less than seven days before the submission date. The trial court stated that leave was denied because the motion was not timely filed, and Wilkinson provided no legitimate reason for leave of court. *See* Tex. R. Civ. P. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."). Wilkinson filed her motion to submit additional summary judgment evidence on April 20, 2017, after the trial court held a hearing on the motions for summary judgment. The trial court denied the motion because Wilkinson failed to provide a legitimate reason for granting leave for late filing.

"We review a trial court's ruling on a motion for leave to file a late summary-judgment response for an abuse of discretion." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002).

> [A] motion for leave to file a late summary-judgment response should be granted when a litigant establishes good cause for failing to timely respond by showing that (1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment.

*Id*. at 688. Here, Wilkinson presented an affirmative defense for the first time in an amended pleading filed on April 11, 2017, but she failed to offer any explanation why she filed her amended pleading and supplemental motion less than seven days

35

before the date scheduled for the summary judgment hearing. Wilkinson presents no substantive argument and authorities to support her argument that the trial court abused its discretion. We conclude the trial court acted within its discretion when it denied leave to supplement the motion for summary judgment and summary judgment evidence.

Wilkinson argues in her appellate brief that she conclusively established her entitlement to summary judgment on the Commission's professional misconduct allegations. Wilkinson claims her failure to account to J.G. was the only claim of misconduct alleged by the Commission. Wilkinson argues Frazier's demand that she turn over J.G.'s assets to him personally, together with her response informing Frazier that she had no obligation to comply with his demand, establish that she was entitled to summary judgment on the Commission's allegations of professional misconduct because Frazier lacked authority to demand information about the trust.

The Commission alleged that Wilkinson's actions in drafting the trust agreement and power of attorney violated Rule 8.04(a)(7) and her actions that resulted in a $450,000 reduction in value of the liquid assets of the trust violated Rule 8.04(a)(2) and (3). The summary judgment record shows that the trust agreement required Wilkinson to keep accurate and complete records of trust transactions and provided that the beneficiary or the beneficiary's representative

could inspect the records at any reasonable time. Wilkinson's refusal to provide information to Frazier does not establish that she neither committed a crime nor engaged in dishonest conduct in her handling of the trust's assets. We conclude that Wilkinson has not shown that the trial court abused its discretion by denying her motion for summary judgment. We overrule issue three and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 6, 2019
Opinion Delivered July 25, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

37